## UNITED STATES v. LOUISVILLE & N. R. CO.

### (District Court, W. D. Kentucky. November 12, 1907.)

### No. 14.

**1. CARRIERS—INTERSTATE CARRIERS OF LIVE STOCK—TWENTY-EIGHT HOUR LAW.**

Act June 29, 1906, c. 3594, §§ 1–4, 34 Stat. 607, 608 [U. S. Comp. St. Supp. 1907, pp. 918, 919], commonly known as the "28 hour law," which prohibits interstate carriers of live stock from confining the same in cars or vessels for more than 28 consecutive hours without unloading them for feed, water, and rest, and which imposes a penalty for its violation, is a criminal statute, and in a proceeding to enforce the penalty, although the action is civil in form, the defendant is presumed innocent until every essential element of the offense is proved beyond a reasonable doubt.

**2. SAME—ACTION FOR PENALTY—SUFFICIENCY OF EVIDENCE.**

In an action under such statute against a railroad company to recover the penalty imposed thereby for "knowingly and willfully" failing to comply with its provisions, based on the failure of defendant to unload a car load of cattle until nearly six hours after their receipt from a connecting road, by which they had been loaded 24 hours previously, the government is not entitled to recover on proof merely of such facts; there being no evidence that they were not unloaded and fed during such time, or that defendant had knowledge of the time when they were loaded.

George Du Relle, Dist. Atty., for the United States.

Benjamin D. Warfield, Helm & Helm, and J. T. O'Neal, for defendant.

EVANS, District Judge. The United States as plaintiff brought this civil suit as authorized by section 4 of the act of June 29, 1906, c. 3594, 34 Stat. 608 [U. S. Comp. St. Supp. 1907, p. 919], for the recovery of the penalty prescribed in section 3 of the same act for a violation of sections 1 and 2 thereof. The sections referred to are as follows:

"Section 1. That no railroad, express company, car company, common carrier other than by water, or the receiver, trustee, or lessee of any of them, whose road forms any part of a line of road over which cattle, sheep, swine, or other animals shall be conveyed from one state or territory or the District of Columbia into or through another state or territory or the District of Columbia, or the owners or masters of steam, sailing, or other vessels carrying or transporting cattle, sheep, swine, or other animals from one state or territory or the District of Columbia into or through another state or territory or the District of Columbia, shall continue the same in cars, boats, or vessels of any description for a period longer than twenty-eight consecutive hours without unloading the same in a humane manner, into properly equipped pens for rest, water, and feeding, for a period of at least five consecutive hours, unless prevented by storm or by other accidental or unavoidable causes which can not be anticipated or avoided by the exercise of due diligence and foresight: Provided, that upon the written request of the owner or person in custody of that particular shipment, which written request shall be separate and apart from any printed bill of lading, or other railroad form, the time of confinement may be extended to thirty-six hours. In estimating such confinement, the time consumed in loading and unloading shall not be considered, but the time during which the animals have been confined without such rest or food or water on connecting roads shall be included, it being the intent of this act to prohibit their continuous confinement beyond the period of twenty-eight hours, except upon the contingencies hereinbefore stated: Provided, that it shall not be required that sheep be unloaded in the night-

time, but where the time expires in the nighttime in case of sheep the same may continue in transit to a suitable place for unloading, subject to the aforesaid limitation of thirty-six hours.

"Sec. 2. That animals so unloaded shall be properly fed and watered during such rest either by the owner or person having the custody thereof, or in case of his default in so doing, then by the railroad, express company, car company, common carrier other than by water, or the receiver, trustee, or lessee of any of them, or by the owners or masters of boats or vessels transporting the same, at the reasonable expense of the owner or person in custody thereof, and such railroad, express company, car company, common carrier other than by water, receiver, trustee, or lessee of any of them, owners or masters, shall in such case have a lien upon such animals for food, care, and custody furnished, collectible at their destination in the same manner as the transportation charges are collected, and shall not be liable for any detention of such animals, when such detention is of reasonable duration, to enable compliance with section 1 of this act; but nothing in this section shall be construed to prevent the owner or shipper of animals from furnishing food therefor, if he so desires.

"Sec. 3. That any railroad, express company, car company, common carrier other than by water, or the receiver, trustee, or lessee of any of them, or the master or owner of any steam, sailing, or other vessel who knowingly and willfully fails to comply with the provisions of the two preceding sections shall for every such failure be liable for and forfeit and pay a penalty of not less than one hundred nor more than five hundred dollars: Provided, that when animals are carried in cars, boats, or other vessels in which they can and do have proper food, water, space, and opportunity to rest the provisions in regard to their being unloaded shall not apply.

"Sec. 4. That the penalty created by the preceding section shall be recovered by civil action in the name of the United States in the Circuit or District Court holden within the district where the violation may have been committed or the person or corporation resides or carries on business; and it shall be the duty of United States attorneys to prosecute all violations of this act reported by the Secretary of Agriculture, or which come to their notice or knowledge by other means."

The plaintiff's petition alleges that:

"The defendant at 9 o'clock p. m., July 20, 1907, completed loading at Newbern, Tenn., certain live stock, to wit, 40 cattle, including 2 calves, for shipment to Louisville, Ky., in Illinois Central car No. 150417, and said 40 cattle, including 2 calves, were continuously confined by said defendant within said Illinois Central car No. 150417 until 3:10 o'clock a. m., July 22, 1907, and for a period longer than 28 consecutive hours, without unloading said 40 cattle, including 2 calves, in a humane or any manner, into properly equipped or into any pens for rest, water, and feeding, for a period of at least 5 consecutive hours, and said defendant did not unload said 40 cattle, including 2 calves, at all for rest, water, or food; but as aforesaid, confined said 40 cattle, including 2 calves, in said car for 30 consecutive hours and 10 minutes, without unloading said 40 cattle, including 2 calves, for rest, water, or food.

"Plaintiff further says that defendant was not prevented by storm, or other accidental or unavoidable cause, which could not be anticipated or avoided by the exercise of due diligence and foresight, from unloading said 40 cattle, including 2 calves, for rest, water, or feeding; but that said defendant railroad company knowingly and willfully failed to comply with the provisions and requirements of said act of Congress and of the first section thereof in manner and form as herein aforesaid."

It is not disputed that the defendant is a railroad company within the United States, whose road forms part of a line of road over which cattle are shipped from one state to another, but defendant, by its pleadings, put in issue those allegations of the petition which are above copied.

A stipulation was filed agreeing that the court might hear the case without a jury, and, further, that the material facts of the case were as follows:

"Said car I. C. No. 150417 was loaded at Newbern, Tenn., on July 20th, at 9 o'clock p. m.; was hauled by the Illinois Central Railroad Company over its lines and delivered to the L. & N. Railroad Company on their transfer track on Magnolia street between Tenth and Fourteenth streets in the city of Louisville, at 9:20 p. m., July 21st, at which point the car was immediately picked up by the L. & N. Railroad switching crew and transferred to the defendant's East Louisville Yards, and was ready for the stockyard delivery at 10:20 p. m., the cattle then having been in the car without food, rest, or water for 25 hours and 20 minutes, and was unloaded at 3:10 a. m. July 22d.

"At or about 8 p. m. on the 21st of July, the Bourbon Stockyards had ordered and there had been placed for loading 15 cars to be ready for hauling by train No. 38, L. C. & C. Division of the L. & N., and had also placed between 8 o'clock and 9:30 in said Bourbon Stock Yards 9 cars for unloading, so that 24 out of the 29 chutes at the Bourbon Stock Yards were in actual service prior to the time the car in question arrived.

"I. C. Car No. 150417 was placed near the Bourbon Stock Yards on a side track, together with six other cars arriving on the same train from South Louisville. and was the twentieth car in order to be placed in the Bourbon Stock Yards; stock cars received being taken in order of arrival for placement at the stock yards. The car in question was placed at the stock yards at the earliest possible time in the order in which it had been received, and upon the finishing of the loading and unloading of the cars that were at the stock yard chutes at the time said car was received by the L. & N. Railroad.

"The Bourbon Stock Yards and defendant's live stock depot in the city of Louisville is one of the best equipped in the country. It contains 29 cattle chutes, located on 2 tracks, and the average number of cars handled at the Bourbon Stock Yards in each 24 hours is 75. During the months of July and August, 1907, owing to the late spring, shipments of cattle received at the stock yards were unprecedented and more than the road and the stock yards had ever experienced in their history.

"The time for loading and unloading stock varies with the nature of the stock and its peculiarities, and also with the fact of whether or not different kinds of stock are shipped in the same car, requiring a partition to be built. The average time required for unloading stock from a car is approximately 20 minutes, and the average time for loading stock is approximately 30 minutes."

No other evidence was offered at the hearing.

The sections of the Revised Statutes, which were superseded by the act above set forth, have been construed by the Circuit Court of Appeals of this circuit in the case of Newport News, etc., Co. v. United States, 61 Fed. 488, 9 C. C. A. 579, and we have been guided and controlled by that construction in the determination of the four other cases against this defendant which were heard simultaneously with this one. That court seems to have held that the words, "unless prevented from so unloading by storm or other accidental causes," excludes every accidental cause not arising out of an act of God. It may be true that that construction was very rigid, and that in many cases other causes would as inexorably prevent unloading as would an act of God, such, for example, as a wreck where relief in a few hours was impossible, because neither means of removing the cattle from the cars nor guarding them afterwards were present; but these considerations must be addressed to tribunals having power to modify, retract, or reverse the ruling in the case referred to. We think, however, that that opinion does not apply to this case, for reasons which will become apparent. In the

case of United States v. Illinois Central R. R. Co. (very recently decided) 156 Fed. 182, we had occasion to give effect to certain general and well-established principles which must control in the construction and enforcement of such statutes as the safety appliance act. Those principles must equally govern in cases which, like this, arise under what is commonly called the "28 hour law." We need not repeat what was then somewhat fully stated. One of the conclusions then reached was that all such statutes are criminal laws, inasmuch as they create public offenses and provide a penalty for committing them. Lees v. United States, 150 U. S. 480, 14 Sup. Ct. 163, 37 L. Ed. 1150; Huntington v. Attrill, 146 U. S. 657, 13 Sup. Ct. 224, 36 L. Ed. 1123. As indictments are not essential in order to punish violations of such laws (the offense being neither capital nor infamous), Congress may provide that proceedings for their enforcement by the courts shall take the form of civil suits. We also concluded that such statutes, being in their nature penal and criminal, should be strictly construed, but not so strictly as to defeat the obvious intention of Congress. Furthermore, it was found that in all prosecutions arising under them certain fundamental rules of penal and criminal law must be applied, among them: (1) That the accused must be presumed to be innocent until his guilt is established by the evidence to the exclusion of a reasonable doubt; (2) that every element of the offense charged should be thus established (Clyatt v. United States, 197 U. S. 222, 25 Sup. Ct. 429, 49 L. Ed. 726; Kirby v. United States, 174 U. S. 55, 19 Sup. Ct. 574, 43 L. Ed. 890), and that the court should permit no one to be convicted until that was done (197 U. S. 222, 25 Sup. Ct. 429, 49 L. Ed. 726); and (3) that the burden of proof was upon the United States not only to begin with, but throughout the case (Agnew v. United States, 165 U. S. 50, 17 Sup. Ct. 235, 41 L. Ed. 624).

The penal offense with which the defendant is here charged is based upon two statutory provisions which clearly indicate its essential elements to be: (1) That no railroad which forms part of a line of road over which cattle or other animals are conveyed from one state to another shall confine the same in cars for a longer period than 28 consecutive hours without unloading the same for rest, water, and feeding for a period of at least 5 consecutive hours, unless prevented from so unloading by storms or other accidental causes; and (2) that the defendant shall knowingly and willingly fail to do those things.

When we recall the last clause of section 4386, which provides that in estimating the length of the confinement of the cattle the time of confinement by a connecting road shall be included, we cannot doubt that the first element of the offense here charged has, at least technically, been proved, unless we hold, as probably we might, that there was a fatal variance between the averments of the petition and the testimony as to the loading of the car in Tennessee; the petition averring that it was done by the defendant, and the uncontradicted evidence being that it was loaded by the Illinois Central.

But, however this may be, section 4386 only imposes a penalty when the carrier "knowingly and willingly fails" to comply with the provisions of the statute. That is the express condition upon which the right to recover the penalty is based. In short, knowledge and willingness to neglect compliance with the provisions of the statute to-

gether constitute an essential element of the offense charged in plaintiff's petition. The petition therefore avers (and otherwise it would not state a cause of action) that the defendant did "knowingly and willingly fail" to comply with the provisions of the statute in the respects indicated, and, having so alleged, the plaintiff must establish the truth of the averment by testimony to the exclusion of a reasonable doubt. Has this been done by the testimony, all of which is embraced in the stipulation? If the cattle had (as seems to be charged in the petition) been loaded by the defendant itself on a car at Newbern, Tenn., and brought to Louisville altogether over the defendant's road, the case would have been simple enough; but the testimony shows that the cattle were shipped over the Illinois Central Railroad; that the last-named railroad alone brought them to Louisville by a trip ·lasting 25 hours and 20 minutes; and that the defendant, at 9:20 p. m., took them at the connecting point of the two roads on one side of that city, and carried them to the stock yards on the other side of it within about an hour, but did not, and probably could not, unload them before 3:10 a. m. of the same night. The agreed statement of facts in no way indicates that the defendant then had any knowledge or information as to how long the cattle had been in the car or on the journey, nor any that the cattle had not been taken out, rested, watered, and fed by the owner or previous carrier before the car containing them was delivered to the defendant to be switched over to the stockyards. However well the facts may now be known, no proof was offered that the defendant at the time the switching was done had any knowledge in the premises, and, as we must presume it to be innocent until its guilt is affirmatively shown to the exclusion of a reasonable doubt, we cannot, in this instance, find that it "knowingly and willingly failed" to comply with the provisions of the statute. Certainly we cannot do this when the parties have agreed that the defendant received them at 9:20 p. m. and unloaded them at 3:10 the next morning, all during a part of one night, and thus having them in its hands only 5 hours and 10 minutes.

True, the statute requires the computation of the 28 hours to include the time previous carriers had the cattle in charge, but there is in this prosecution no presumption either of law or fact that the cattle had not been taken out, rested, watered, and fed by the owner or the previous carrier; nor any that the last carrier had been given any information as to how long the cattle had been in the car, nor as to how they had been treated. Suppose a shipment of cattle to ḅ made in Western Texas destined for New York City, several days would be required for the long transit, and the cattle would have to be taken out several times if the law were obeyed. Could the last carrier in the route—say the one from Washington to New York— be convicted upon evidence to the effect only that a week before the cattle had been put into the car in Western Texas? Would such evidence alone warrant a judgment of guilty? In other words, could a verdict of guilty be returned against the carrier in the extreme East upon the mere arbitrary presumption that the cattle had not been taken out, rested, watered, and fed for a week or more or within 28 hours before they reached New York, and that the accused knew it? The answer to these questions must be in the negative, unless, for

such cases, we annul those safeguarding principles of the penal law to which we have referred, and which we may again note by way of emphasis, viz.: (1) That the accused must be presumed to be innocent; (2) that every element of the offense must be proved by evidence which excludes a reasonable doubt of guilt; and (3) that the burden is upon the government to make such proof.

In the case before us the United States has charged the defendant with the commission of a penal offense. The latter has put in issue all the elements of that charge. One of those elements (perhaps one of the most essential of them) is that the defendant "knowingly and willingly" did the things alleged against it. No positive testimony as to the truth of this last element of the offense charged, namely, the scienter, was offered at the trial. Only presumptions claimed to grow out of the agreed facts were relied upon by the United States. If the proceeding to enforce the penalty claimed were by indictment, there could be no doubt that the jury trying the case should, upon this evidence, be directed to find the accused not guilty. The rule cannot be different where the prosecution takes the form of a civil suit, as we pointed out in the opinion in United States v. Illinois Central R. R. Co., 156 Fed. 185. It may be true that, in cases where more than one. carrier made up the line of roads over which cattle were shipped, it would be difficult and laborious for the government to secure sufficient testimony to prove the commission of the offense; but it would be an altogether novel doctrine and a new development of criminal jurisprudence if that fact should be found to afford any legal and sufficient reason for a conviction upon less fullness of evidence than that which time out of mind has been held to be required in criminal and penal prosecutions. As at present advised, we cannot recognize nor enforce such a proposition, but must, in this case, as in all other prosecutions for penal offenses, hold that when the United States, either through the medium of a grand jury by indictment, or through the form of a civil suit, accuses any person (individual or corporate) of a criminal or penal offense, it must be prepared at the trial (however great the labor or trouble may be) to prove by competent and sufficient testimony every element of the offense charged to the exclusion of all reasonable doubt. Until that is done, the United States is not entitled to a judgment or verdict of guilty.

The plaintiff having failed to do this here, the court finds the defendant not guilty as charged in the petition.