A. B. DICK CO. v. HENRY et al.

(Circuit Court, S. D. New York.  March 23, 1908.)

PATENTS—VALIDITY—PROCESS FOR DUPLICATING TYPEWRITTEN WORK.

The Dick patent, No. 466,557, for a process of duplicating typewritten work, which consists of introducing into a typewriter a stencil sheet, coated with wax or similar material, with other sheets in front and rear of it and after the typed impressions have been made thereon, peeling off the outer sheets, and with them the adhering wax where the types have struck so that the middle sheet may be used as a stencil for duplicating the typewriting, is void in view of the patent to Fuerth who was adjudged priority over Dick as the inventor of the combination of the three sheets so used, leaving only the function or work of the typewriting machine to be covered by the Dick patent, which is not a patentable process.

In Equity.

Samuel Owen Edmonds (J. Edgar Bull, of counsel), for complainant.

A. Bell Malcolmson (Arthur von Briesen, of counsel), for defendants.

HOLT, District Judge.  This suit was brought to restrain the infringement of patent No. 466,557, granted January 5, 1892, and assigned to the complainant, for a process of duplicating typewritten work.  The general processes in use for duplicating typewritten work, before the invention of Brodrick, consisted in taking a closely woven paper sheet, coated on one side with hard wax, and writing on it, either by a pen carrying a small perforating wheel at its point, or by a stylus, the sheet having previously been laid upon a file-plate, or sand-paper, or other perforating surface, the result by either process being that the paper was perforated where the characters were formed, the rest of the paper remaining impervious to ink by reason of the wax. Such paper constituted a stencil, with which any number of duplicates of the writing could be made, by placing it on a sheet of paper and passing over it an ink roller.  Brodrick, in 1886, conceived the idea of employing a stencil sheet made of very thin paper, so loosely woven and open that ink would pass through it, and covering the sheet with a soft wax capable of being expressed from the underlying porous fibers of the paper by the impact of the type of an ordinary typewriting machine.  Such a prepared sheet was laid on a backing of tissue paper or other material, and the two sheets placed in the typewriter; when struck with the type, the wax under the type was driven through the waxed sheet, or away from the space under the type.  After this process the wax sheet could be used as a stencil without the paper being perforated.  The underlying idea of Brodrick's invention was ingenious and valuable.  That was to make a stencil of such thin paper that ink would pass through it without the paper being perforated.  But in actual practice it was found that there was some difficulty in the use of Brodrick's stencil from the fact that the face of the type, striking directly upon the waxed surface of the paper, became in

a short time somewhat clogged with wax, and then made impressions upon the wax which were blurred and indistinct. The sole substantial difference in the method of making such a stencil plate claimed under the patent in suit is that a piece of tissue paper, or other similar porous material, is placed on top of the waxed sheet, so that the combination, when put in the typewriter, consists of the top sheet, the waxed sheet and the back sheet. When such a combination is used, the face of the type, striking on the top sheet of tissue paper, does not become clogged with wax, and the result is that little plugs of wax, of the shape of the type, that become removed from each side of the waxed sheet, adhere to the top and back sheet, and, after the three sheets are taken out of the typewriter, and the top and back sheets are peeled off from the waxed sheet, the little wax plugs under the type are withdrawn from both sides of the waxed sheet and the sheet remains a stencil. It is a question whether this use of a top sheet of tissue paper amounted to invention, and whether such a top sheet was not in common use more than two years before the application for Dick's patent; but in the view I take of this case it is unnecessary to decide these questions. On October 11, 1887, Dick filed in the Patent Office an application for a patent for a process of preparing duplicating stencils, in the specifications of which he fully described the combination of the top sheet, the waxed sheet, and the back sheet. On October 20, 1890, Dick filed an application for the patent in suit, which originally contained various claims for a process. On October 27, 1890, Fuerth filed an application for a patent for an improvement in the preparation of typograph stenciling material, in which he claimed to have invented the combination of the top sheet, the waxed sheet, and the back sheet. On March 5, 1891, Dick filed an application for the same combination, in order to secure an interference with Fuerth. An interference was declared, testimony taken, and a hearing had in the Patent Office. The Examiner of Interferences decided in favor of Dick as the prior inventor of the combination; that is, the first to use the top sheet. An appeal was taken to the Examiners in Chief, who reversed the decision of the Examiner of Interferences, and decided that Fuerth was the prior inventor. An appeal was taken to the Commissioner, who affirmed the decision of the Examiners in Chief. The priority of invention was therefore finally adjudicated in the Patent Office in favor of Fuerth. Thereupon, in May, 1895, the patent for the combination was issued to Fuerth. But in January, 1892, the patent in suit was issued to Dick for the process. The complainant in this suit was the owner of the Brodrick patent, which has expired. It is the owner of the Fuerth patent for the combination, which has not expired, and of the Dick patent for the process, which has not expired. Under these circumstances the question arises whether the process patent to Dick was valid. The claims in the Fuerth patent for the combination are as follows:

"1. In combination with a stencil sheet, sheets of paper in front and rear thereof adapted to extract a portion of the coating of the stencil sheet within the lines of the extracting characters.

"2. In combination with a stencil sheet having both sides coated, an uncoated extractor sheet in front thereof and an extractor sheet of soft paper

in the rear of the stencil sheet adapted to have the characters embedded thereon.

"3. In combination with a fibrous coated sheet other sheets in the front and rear thereof, adapted to simultaneously remove, by extraction, the coating of the fibrous sheet, within the lines of the contacting characters, whereby said coating is extracted in contradistinction to being driven through the stencil sheet, thereby neither abrading nor perforating the fiber of said stencil."

The claim in the patent in suit for the process is as follows:

"I claim the process of preparing a stencil for duplicating copies, consisting in introducing into a typewriting machine a sheet of porous material coated with an ink-proof substance, a sheet of paper arranged in the rear thereof, and a sheet of tissue-paper arranged in front thereof, to both of which paper sheets the ink-proof substance will adhere, then impressing the superimposed sheets with the matter to be copied, thereby causing the ink-proof substance of the coated sheet to adhere to the surface of the other sheets on the lines of impression, and then separating the sheets, thereby removing the coating from the ink-proof sheet on the lines of the type-impression, substantially as set forth."

It is perfectly obvious that the combination claimed and described in the Fuerth patent, which the Patent Office, upon interference proceedings, decided had been invented by Fuerth and not by Dick, is the same combination which must be used to carry out the alleged process in the Dick patent in suit. The claim of the patent in suit purports to be a claim for a process, but the combination of the top sheet, the waxed sheet, and the back sheet cannot be made a part of the process, because Dick claimed to have invented that combination, and it was decided, in the proceedings for interference, that Fuerth invented it. The only step, therefore, which can be called a process, in making a stencil sheet under Dick's process patent, is that the combination held to have been patented by Fuerth, and decided to have been invented by him, is put into the ordinary typewriting machine and printed there and taken out again. That, in my opinion, is not a process, within the meaning of the patent law, but is a mere function, or work of a machine, which, under the authorities, is not patentable. Corning v. Burden, 15 How. 257, 14 L. Ed. 683; Risdon Locomotive Works v. Medart, 158 U. S. 68, 15 Sup. Ct. 745, 39 L. Ed. 899; Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, 18 Sup. Ct. 707, 42 L. Ed. 1136; Busch v. Jones, 184 U. S. 607, 22 Sup. Ct. 511, 46 L. Ed. 707. Whether the complainant could maintain any action upon the Fuerth patent it is unnecessary to consider in this case, but, in my opinion, the patent upon which this suit is brought is invalid on the grounds stated. It was argued by counsel that the proceeding by which the stencil plate was produced was a process because two steps were taken, first, to run the combination through the machine, and then, after it was taken out, to peel off the top and back sheets, thus withdrawing the little plugs of wax from the waxed paper; but, in my opinion, that is a mere incident to the working of a machine. It might as well be said that, after a patent had been obtained for a typewriter, a patent could be obtained for the process of making the ordinary four or five carbon copies of typewriting, because the operator has to place a sheet of carbon between each two sheets of paper,

and, after writing on the combined sheet thus made, has to remove the carbon sheets, leaving the sheets of paper with the carbon writing.

My conclusion is that the bill should be dismissed on the merits, with costs.