## MONTANA CENT. RY. CO. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. October 5, 1908.)

No. 1,558.

1. CARRIERS (§ 211*) — INTERSTATE CARRIERS OF LIVE STOCK — TWENTY-EIGHT HOUR LAW.

Act June 29, 1906, c. 3594, § 1, 34 Stat. 607 (U. S. Comp. St. Supp. 1907, p. 918), known as the 28-hour law, which prohibits interstate carriers of live stock from keeping the same confined for a period longer than 28 consecutive hours without unloading for rest, water, and feeding, and which subjects a carrier knowingly and willfully violating its provisions to a penalty, to be recovered by a civil suit, is not a criminal statute, nor subject to the strict rules of construction or of evidence applied in criminal prosecutions.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 211.*]

2. CARRIERS (§ 211*) — TWENTY-EIGHT HOUR LAW — ACTION FOR VIOLATION—DEFENSES.

In an action against a railroad company to recover the penalty for knowingly and willfully violating such act, it is not a defense that such violation was by reason of the "oversight, forgetfulness, and unintentional neglect" of its train dispatchers, contrary to its rules and orders.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 211.*]

In Error to the District Court of the United States, for the District of Montana.

This action was brought by the government to enforce a penalty growing out of the alleged violation of Act Cong. June 29, 1906, c. 3594, 34 Stat. 607 (U. S. Comp. St. Supp. 1907, p. 918) to prevent cruelty to animals, commonly known as the "Twenty-Eight Hour Law." The plaintiff in error is a Montana corporation, and at the time in question owned and operated a railroad from a point near Great Falls to the city of Butte, in that state. Since the sole defense interposed by the defendant to the action is presented by its answer, a demurrer to which the court below sustained, the only question presented is as to the sufficiency of the answer. The facts set up by that pleading are that on the 23d of November, 1906, Corey Bros., of Montana, delivered to the defendant railway company about 60 horses, at its station of Armington, in that state, to be by it and its connecting carriers transported to Twin Falls in Idaho. The horses constituted part of a train load of live stock consisting of 41 cars. The loading of the train was commenced about 9 o'clock in the morning of the day mentioned; but, although the loading of the train was conducted diligently and without negligence on the part of either the ship-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

pers or the carriers, it was not completed, and could not, with due diligence, have been completed, before 8 o'clock of the evening of that day. Because of certain unavoidable delays, the train did not leave Armington until 7:30 a. m. of November 24th, at which time it started and was conducted with reasonable diligence and dispatch as far as the defendant company's station of Clancy, in Jefferson county, Mont., arriving at that station at 8 o'clock in the evening of November 24th—the horses having then been in the cars of the defendant company for no greater period of time than 24 hours since the completion of the loading of the train at Armington. The train, including the cars containing the horses, was not unloaded at Clancy, nor were the horses fed or watered there, and the train did not leave that station until 1 o'clock in the morning of November 25th, at which time the horses had been confined in the cars for a period of 29 hours since the loading of the train had been completed at Armington; nor was the train unloaded at the city of Butte until 10:30 o'clock a. m. of November 25th. The answer alleges that long prior to the time when the shipment in question was made the defendant company had duly issued a formal and printed circular known as "Circular No. 1,149," addressed to all its agents, in and by which the agents were notified of the precise provisions, conditions, and requirements of the act of Congress relating to the interstate transportation of animals, and required to conform strictly to all of its provisions; and the company had also, before the time of the shipment in question, issued a special typewritten circular, signed by its superintendent, and known as "Circular No. 21," addressed to all agents, yardmasters, and others concerned, in and by which last-mentioned circular the company again gave notice to each of its employés of the precise requirements of the said act of Congress, and required strict and full compliance with all of its provisions by each of its employés, a copy of both of which circulars the company caused to be placed on all bulletin boards at each of its terminals, for the information, guidance, and instruction of all trainmen and other employés in any way connected with the loading, unloading, or transportation of live stock, or the operation of trains containing such stock. The answer also alleges that the defendant company necessarily intrusted the control and movement of all trains, including the one containing the horses in question, to the supervision and direction of its chief dispatchers and assistant dispatchers at Great Falls, Mont., where its principal office and its division headquarters are located, and alleges that said dispatchers had, long before the time of the shipment in question, been furnished with a printed copy of the said act of Congress, and had been directed in writing to at all times conform to the provisions of that statute, and to so direct and control the movement of live stock trains as to always insure the unloading of live stock for rest, feed, and water in the manner and within the periods prescribed by the said law; that through the oversight, forgetfulness, and unintentional neglect of the said dispatchers, and not otherwise, no notice was given to the company's agent at the station of Clancy that a train containing live stock was being transported over the company's railroad, and no authority or direction was given by any of the said dispatchers for the unloading of the said stock at the said station; that the said live stock was under those circumstances confined on the defendant company's cars for a longer period than 28 hours without being unloaded for rest, water, and feeding, and that the failure to so unload was not prevented by storm or other accidental or unavoidable causes which could not have been anticipated or avoided by the exercise of due diligence and foresight on the part of the defendant company's employés, nor were the said animals carried in cars in which they had or could conveniently have had proper feed, water, and opportunity to rest; that by reason of those conditions and occurrences the present action was instituted by the government against the defendant company to recover the sum of $500 as a penalty prescribed by the said act of Congress, and for the costs of such suit.

The act of Congress of June 29, 1906, is entitled "An act to prevent cruelty to animals while in transit by railroad or other means of transportation from one state or territory or the District of Columbia into or through another state or territory of the District of Columbia, and repealing sections forty-three hundred and eighty-six, forty-three hundred and eighty-seven, forty-three

hundred and. eighty-eight, forty-three hundred and eighty-nine, and forty-three hundred and ninety of the United States Revised Statutes," the first, second, third, and fourth sections of which are as follows·

"Section 1. That no railroad, express company, car company, common carrier other than by water, or the receiver, trustee; or lessee of any of them, whose road forms any part of a line of road over which cattle, sheep, swine, or other animals shall be conveyed from one state or territory or the District of Columbia into or through another state or territory or the District of Columbia, or the owners or masters of steam, sailing, or other vessels carrying or transporting cattle, sheep, swine, or other animals from one state or territory or the District of Columbia into or through another state or territory or the District of Columbia, shall confine the same in cars, boats, or vessels of any description for a period longer than twenty-eight consecutive hours without unloading the same in a humane manner, into properly equipped pens for rest, water, and feeding, for a period of at least five consecutive hours, unless prevented by storm or by other accidental or unavoidable causes which cannot be anticipated or avoided by the exercise of due diligence and foresight: Provided, that upon the written request of the owner or person in custody of that particular shipment, which written request shall be separate and apart from any printed bill of·lading, or other railroad form, the time of confinement may be extended to thirty-six hours. In estimating such confinement, the time consumed in loading and unloading shall not be considered, but the time during which the animals have been confined without such rest or food or water on connecting roads shall be included, it being the intent of this act to prohibit their continuous confinement beyond the period of twenty-eight hours, except upon the contingencies hereinbefore stated: Provided, that it shall not be required that sheep be unloaded in the nighttime, but where the time expires in the nighttime in case of sheep the same may continue in transit to a suitable place for unloading, subject to the aforesaid limitation of thirty-six hours.

"Sec. 2. That animals so unloaded shall be properly fed and watered during such rest either by the owner or person having the custody thereof, or in case of his default in so doing, then by the railroad, express company, car company, common carrier other than by water, or the receiver, trustee, or lessee of any of them, or by the owners or masters of boats or vessels transporting the same, at the reasonable expense of the owner or person in custody thereof, and such railroad, express company, car company, common carrier other than by water, receiver, trustee, or lessee of any of them, owners or masters, shall in such case have a lien upon such animals for food, care, and custody furnished, collectible at their destination in the same .manner as the transportation charges are collected, and shall not be liable for any detention of such animals when such detention is of reasonable duration, to enable compliance with section one of this act; but nothing in this section shall be construed to prevent the owner or shipper or animals from furnishing food therefor, if he so desires.

"Sec. 3. That any railroad, express company, car company, common carrier other than by water, or the receiver, trustee, or lessee of any of them, or the master or owner of any steam, sailing, or other vessel who knowingly and willfully fails to comply with the provisions of the two preceding sections shall for every such failure be liable for and forfeit and pay a penalty of not less than one hundred nor more than five hundred dollars: Provided, that when animals are carried in cars, boats, or other vessels in which they can and do have proper food. water, space, and opportunity to rest the provisions in regard to their being unloaded shall not apply.

"Sec. 4. That the penalty created by the preceding section shall be recovered by civil action in the name of the United States in the Circuit or District Court holden within the district where the violation may have been committed or the person or corporation resides or carries on business; and it shall be the duty of United States attorneys to prosecute all violations of this act reported by the Secretary of Agriculture, or which come to their notice or knowledge by other means."

I. Parker Veazey, for plaintiff in error.

Carl Rasch, U. S. Atty.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). From the foregoing statement it will be seen that the answer itself expressly alleges that the horses in question were confined on the company's cars for a longer period than 28 hours without being unloaded for rest, water, or feeding, and that its failure to so unload them was not caused by storm, or other accidental or unavoidable causes, which could not have been anticipated or avoided by the exercise of due diligence and foresight on the part of the company's employés, and that the horses were not carried in cars in which they had, or could conveniently have had, feed, water, or opportunity to rest. The answer further expressly alleges that the cause of this violation of the provisions of the statute was that:

"By and through the oversight, forgetfulness, and unintentional neglect of said dispatchers, and not otherwise, no notice was given to the defendant's agent at said station of Clancy that a train containing live stock was being transported over defendant's line, and would arrive at said station, and no authority or direction was given by said dispatchers for the unloading of said stock at said station."

The sole defense is that the statute imposes the penalty only on the carrier "who knowingly and willfully" fails to comply with its provisions; and it is earnestly contended for the plaintiff in error that the company here did not "knowingly and willfully" confine the horses for the time and under the circumstances stated. Its counsel insists that the case if not a criminal one, is at least of a criminal nature, and that to it should be applied the same strict rules of construction and of evidence which are applied in criminal prosecutions. In that position he is supported by the cases of the United States v. Louisville & N. R. R. Co. (D. C.) 157 Fed. 979, and United States v. Illinois Central Railroad Company (D. C.) 156 Fed. 182. But we are unable to take that view of the matter. We do not understand the statute to make a violation of its provisions a crime. It is true that a penalty is imposed for its violation, but the penalty is a pecuniary one only, which Congress expressly provided shall be recovered by civil action in the name of the United States, having, as we think, the ordinary incidents of a civil action. This view is in accord with that taken of the same and of a similar statute in the cases of United States v. Southern Pacific Railroad Company (D. C.) 157 Fed. 459, United States v. Central of Georgia Railway Company (D. C.) 157 Fed. 895, United States v. Philadelphia & Reading Railway Company (D. C.) 160 Fed. 696, and United States v. Baltimore & O. S. W. Railroad Company (C. C. A.) 159 Fed. 33.

The company, being a corporation, could, of course, only act through agents, and its answer expressly alleges that the horses in question were confined on its cars in violation of the statute by reason of the "oversight, forgetfulness, and unintentional neglect" of its train dispatchers. As was held by the court below, we think the facts expressly

alleged in the answer negative the claim that the failure to rest, feed, and water the horses was not the result of knowledge and willfulness on the part of the company. It knew through its agents, and through them only could know, that the horses were loaded on its cars, when their transportation commenced, where it should rest, water, and feed them as required by the statute, instead of doing which it, through its agents, continued to carry them in its cars longer than the statutory period of 28 hours without rest feed, or water. When the company did this, according to its own averments, by and through the only means it transported or could transport them at all, namely, its agents, we do not think it can be heard to say that it did not do so "knowingly and willfully."

The judgment is affirmed.