### UNITED STATES v. RAILWAY EXPRESS AGENCY, Inc.

District Court, S. D. New York.

Dec. 6, 1934.

260

Martin Conboy, U. S. Atty., of New York City (Mary R. Towle, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Charles C. Evans, of New York City, for defendant.

MOSCOWITZ, District Judge.

This action is brought to recover a penalty of $100 and not to exceed $500 for failure to feed two pigs in violation of the Act of Congress of June 29, 1906, 34 Stat. 607 (45 USCA §§ 71–74).

The act reads in part as follows:

"§ 71. *Transportation of animals; time of confinement; unloading for rest and feeding; unloading sheep.* No railroad, express company, car company, common carrier other than by water, or the receiver, trustee, or lessee of any of them, whose road forms any part of a line of road over which cattle, sheep, swine, or other animals shall be conveyed from one State or Territory or the District of Columbia into or through another State or Territory or the District of Columbia, or the owners or masters of steam, sailing, or other vessels carrying or transporting cattle, sheep, swine, or other animals from one State or Territory or the District of Columbia into or through another State or Territory or the District of Columbia, shall confine the same in cars, boats, or vessels of any description for a period longer than twenty-eight consecutive hours without unloading the same in a humane manner, into properly equipped pens for rest, water, and feeding, for a period of at least five consecutive hours, unless prevented by storm or by other accidental or unavoidable causes which can not be anticipated or avoided by the exercise of due diligence and foresight: Provided, That upon the written request of the owner or person in custody of that particular shipment, which written request shall be separate and apart from any printed bill of lading, or other railroad form, the time of confinement may be extended to thirty-six hours. In estimating such confinement, the time consumed in loading and unloading shall not be considered, but the time during which the animals have been confined without such rest or food or water on connecting roads shall be included, it being the intent of this chapter to prohibit their continuous confinement beyond the period of twenty-eight hours, except upon the contingencies hereinbefore stated: Provided, That it shall not be required that sheep be unloaded in the nighttime, but where the time expires in the nighttime in case of sheep the same may continue in transit to a suitable place for unloading, subject to the aforesaid limitation of thirty-six hours.

"§ 72. *Animals unloaded to be fed and watered by or at expense of owner; lien.* Animals so unloaded shall be properly fed and watered during such rest either by the owner or person having the custody thereof, or in case of his default in so doing, then by the railroad, express company, car company, common carrier other than by water, or the receiver, trustee, or lessee of any of them, or by the owners or masters of boats or vessels transporting the same, at the reasonable expense of the owner or person in custody thereof, and such railroad, express company, car company, common carrier other than by water, receiver, trustee, or lessee of any of them, owners or masters, shall in such case have a lien upon such animals for food, care, and custody furnished, collectible at their destination in the same manner as the transportation charges are collected, and shall not be liable for any detention of such animals, when such detention is of reasonable duration, to enable

compliance with section 1 of this chapter, but nothing in this section shall be construed to prevent the owner or shipper of animals from furnishing food therefor, if he so desires.

"§ 73. *Penalty for failure to comply with law; when provisions for unloading not to apply.* Any railroad, express company, car company, common carrier other than by water, or the receiver, trustee, or lessee of any of them, or the master or owner of any steam, sailing, or other vessel who knowingly and willfully fails to comply with the provisions of the two preceding sections shall for every such failure be liable for and forfeit and pay a penalty of not less than $100 nor more than $500: Provided, That when animals are carried in cars, boats, or other vessels in which they can and do have proper food, water, space, and opportunity to rest the provisions in regard to their being unloaded shall not apply.

"§ 74. *Penalty recoverable by civil action; duty of district attorneys to prosecute.* The penalty created by the preceding section shall be recovered by civil action in the name of the United States in the district court holden within the district where the violation may have been committed or the person or corporation resides or carries on business; and it shall be the duty of United States attorneys to prosecute all violations of this chapter reported by the Secretary of Agriculture, or which come to their notice or knowledge by other means."

On June 3, 1931, the defendant, which is engaged in the express business, received at its office at Waltham, Mass., two pigs consigned to a person in Callicoon, N. Y. These pigs, contained in a crate, were loaded on board a train which left Waltham at 5:18 p. m., Eastern Standard Time. The pigs were transported to Callicoon, N. Y., where the crate containing them was unloaded and placed in the express office at 6:13 p. m. on June 4, 1931. They were provided with water within the statutory period but were not given any food between the time when the train left Waltham, Mass., at 5:18 p. m. on June 3, 1931, until 8:15 a. m. on June 5, 1931, a period of over thirty-eight hours.

The defendant does not claim that it was prevented from complying with the provisions of the statute by storm or other accidental or unavoidable causes which could not have been anticipated or avoided by the exercise of diligence and foresight. It claims that the statute did not obligate it to

feed the pigs after their arrival at Callicoon, N. Y.

It appears that the pigs were taken from the train by the defendant before the expiration of the twenty-eight hour period and placed in the express office at Callicoon, N. Y., where they remained for about eleven hours after the expiration of that period; the pigs not being fed in the meantime.

The duty was upon the defendant to either take the pigs from the car at or before the end of the twenty-eight hour period and deliver them to the consignee, or they could be taken from the car at or before the end of that period, for rest, water, and feeding, for a period of at least five consecutive hours. The fact that the crate containing the pigs was taken from the train at the point of destination within the twenty-eight hour period did not relieve the defendant of its obligation to feed the pigs.

The purpose of this statute was to prevent express companies from starving animals while in their custody. Congress wisely provided for the feeding of animals and for a penalty to be paid by the carrier for failure to do so.

I am not in accord with the decision of the District Court of New Jersey, which is referred to in the case of United States v. Lehigh Valley R. Co., 204 F. 705, decided by the Circuit Court of Appeals, Third Circuit May 5, 1913. The District Court in its opinion stated:

"This action is based upon what is popularly known as the Twenty-Eight Hour Law (Act June 29, 1906, c. 3594, 34 Stat. 607 [U. S. Comp. St. Supp. 1911, p. 1341 (45 USCA §§ 71–74)]), an act intended to prevent cruelty to animals while being transported in interstate commerce. The question reserved at the trial was whether the time the animals were confined to the pens of the defendant at Jersey City should be included in the 28-hour period during which the stock was not fed. The questions of fact as to whether the animals were fed, and whether the defendant knowingly and willfully failed to comply with the provisions of the statute, were submitted to the jury, which found a verdict thereon in favor of the United States. The pertinent portions of the statute are as follows:

"Section 1: 'No railroad * * * carrying or transporting cattle, sheep, swine, or other animals * * * shall confine the same in cars, boats, or vessels of any description for a period longer than twenty-

eight consecutive hours without unloading the same in a humane manner, into properly equipped pens for rest, water, and feeding, for a period of at least five consecutive hours, unless prevented by storm,' etc.

"Section 2 provides that 'animals so unloaded shall be properly fed and watered during such rest, either by the owner * * * or by the railroad * * * at the expense of the owner.'

"Section 3 provides that 'any railroad * * * who knowingly and willfully fails to comply with the provisions of the two preceding sections shall for every such failure be liable for and forfeit and pay a penalty of not less than one hundred nor more than five hundred dollars.'

"The acts so far as we are at present concerned with them, are as follows: The animals, after having been unloaded, fed, and watered at Coxton, Pa., were reloaded by the defendant into its cars at that place at 6:15 p. m., February 18, 1911. At 3:15 p. m., February 19th, they were unloaded into the stock pens of the defendant company at Jersey City, but were not fed. They remained there in the stock pens of the company until February 20th, at which date, at 3:15 a. m., they were loaded on a barge of the defendant and conveyed to their destination, where they were delivered at 8 a. m., of that day. It thus appears that the animals were in charge of the plaintiffs in interstate transportation for a period of 37 hours and 45 minutes, without being fed. During 12 hours of that period, however, the animals were confined in the stock pens of the defendant at Jersey City, and not in its cars, boats, or vessels of any description.

"The penalty of section 3 can, as expressly provided, be applied only when the carrier has failed to comply with the provisions of both sections 1 and 2; that is, the carrier must have confined the animals in cars, boats, or vessels for a period longer than 28 consecutive hours without unloading the same into pens for rest, water, and feeding, and it must also have failed to properly feed and water the animals so unloaded during such period of rest. The animals in question were not, however, confined in the cars, boats, or vessels of any description, of the defendant, for a longer period than 21 consecutive hours, or for a longer period in all than 25 hours and 45 minutes during their transportation from Coxton, Pa., to their destination. Conse-

quently there was no infraction of the statute.

"The statute under which this action is brought is penal, and must be strictly construed. At all events, it cannot be so construed as to create offenses and inflict penalties not in terms expressed, or necessarily implied from what has been expressed. It seems too plain for argument that no offense is created by this statute which does not contain as one of its elements the confinement of the animals being transported in the cars, boats, or vessels of the carrier, for a period longer than 28 consecutive hours, without unloading, etc. In order to make out a violation of the statute in this case, at least 7 hours of the period during which the animals were unloaded and resting in stock pens must be tacked to the 21-hour period of confinement in the cars of the defendant. Moreover, if we take the total period of confinement in the cars, boats, and vessels of the company, it only amounts to 25 hours and 45 minutes, made up of 21 hours' confinement in its cars and 4 hours and 45 minutes on its barge, which hours of confinement, furthermore, were not consecutive, as provided by the act.

"The act neither in terms nor by necessary intendment embraces the case in question. Indeed, its language prohibits the construction which the government seeks to put upon it. If Congress had intended to cover a situation like that here presented, it could easily have done so by prohibiting the confinement in any manner of animals being transported in interstate commerce for a period longer than 28 hours without feeding, watering, and resting them, etc. Confessedly my inclination has been to so construe the act, if possible, as to make it cover the case in question; but it cannot be done, in my judgment, without an exercise of the legislative, rather than the judicial, function.

"Accordingly judgment will be entered for the defendant non obstante veredicto."

It appears from the opinion of the Circuit Court of Appeals affirming the judgment in the matter of United States v. Lehigh Valley R. Co., supra, that the affirmance was on ground other than that set forth by the District Court as a basis of its decision. The Circuit Court of Appeals in its opinion, at page 707 of 204 F., said: "Of course the question before us on this writ is the correctness of the judgment, and if it may properly be supported upon any ground we should affirm

it. The company asks for affirmance upon two grounds: (1) For the reasons given by the District Judge; and (2) because no evidence was offered that the company had knowingly and willfully failed to comply with the statute. It is not necessary to consider the first ground, as the second seems to us amply sufficient to support the judgment."

Upon the trial defendant's counsel offered to prove by the testimony of the consignee of the pigs, "That the pigs were in good condition—as he says, they grew up to be the finest pair of pigs in the country." This testimony I regard as wholly immaterial.

It appearing that this case is in the nature of a test case, the minimum penalty of $100 will be imposed. A jury trial was waived herein.

Findings of fact may be submitted if the parties desire; however, that would not seem necessary, as the facts were conceded and are set forth in this opinion. If findings are waived a decree only may be submitted.

Settle decree on notice.