### UNITED STATES v. UNION PAC. R. CO.

(Circuit Court of Appeals, Eighth Circuit. February 15, 1909.)

No. 2,873.

1. PLEADING (§ 34*)—CONSTRUCTION—GENERAL AND SPECIFIC ALLEGATIONS.

A general averment in a pleading is always controlled and limited by specific allegations on the same subject-matter.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 68; Dec. Dig. § 34.*]

2. CARRIERS (§ 37*)—INTERSTATE CARRIERS OF LIVE STOCK—TWENTY-EIGHT HOUR LAW—"WILLFULLY."

In Act June 29, 1906, c. 3594, 34 Stat. 607 (U. S. Comp. St. Supp. 1907, p. 918), known as the "28-hour law," which prohibits carriers of live stock from keeping the same confined in cars, etc., for more than 28 consecutive hours without unloading for rest, water, and feeding, unless prevented by storm or by other accidental or unavoidable causes which cannot be anticipated or avoided by the exercise of due diligence and foresight, and imposes a penalty on any carrier which "knowingly and willfully" fails to comply with its provisions, the word "willfully" is not used as implying a vicious or evil intent, but as meaning intentionally or voluntarily.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 95; Dec. Dig. § 37.*

For other definitions, see Words and Phrases, vol. 8, pp. 7468–7481, 7835–7836.]

3. CARRIERS (§ 37*)—CARRIERS OF LIVE STOCK—VIOLATION OF TWENTY-EIGHT HOUR LAW—DEFENSES.

A great and unusual press of business does not, unexplained and of itself, excuse the confinement of live stock by a railroad company beyond 28 hours limited by Act June 29, 1906, c. 3594, 34 Stat. 607 (U. S. Comp. St. Supp. 1907, p. 918), nor constitute a defense to an action to recover the penalty for its violation.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 95; Dec. Dig. § 37.*]

In Error to the Circuit Court of the United States for the District of Wyoming.

Timothy F. Burke (George P. McCabe and Edward T. Clark, on the brief), for the United States.

John W. Lacey, for defendant in error.

Before VAN DEVANTER, HOOK, and ADAMS, Circuit Judges.

_____

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

169 F.—5

ADAMS, Circuit Judge. This was an action at law instituted by the United States to recover a penalty from the defendant railroad company, a carrier of interstate commerce, for alleged violation of Act Cong. June 29, 1906, 34 Stat. 607, c. 3594 (U. S. Comp. St. Supp. 1907, p. 918), which prohibits confinement of live stock in cars for more than 28 hours without unloading for rest, water, and feeding. The petition stated facts constituting a cause of action under the statute, and particularly stated that the railroad company confined the live stock "knowingly and willfully." The answer contained an admission that defendant received the stock for carriage, that it was confined en route, and not unloaded for a period of more than 36 hours. It then averred as follows:

"And defendant denies that its failure to unload the said live stock in accordance with law was in any way willful or from avoidable cause which could have been anticipated by the exercise of due diligence and foresight; but, on the contrary, avers that the said failure was wholly caused by the great and unusual press of business both on the tracks of the defendant and at its stockyards, causing delays at the meeting points of its trains, and failures of its engines, both those carrying the cars aforesaid and those drawing other trains which affected and delayed the train carrying the said live stock and alone caused the said live stock to be confined beyond the time limited by law."

The sufficiency of this answer as a defense was challenged by demurrer, which was overruled, and, plaintiff declining to plead further, final judgment was rendered in favor of the defendant. Due exception having been preserved, the case is brought here by writ of error for review. Did the answer state a defense? Section 1 of the act of June 29, 1906, provides that no railroad engaged in interstate commerce in the transportation of cattle, sheep, swine, or other animals shall, without the written request of the owner or person in custody thereof, "confine the same in cars * * * for a period longer than twenty-eight consecutive hours without unloading the same in a humane manner into properly equipped pens for rest, water, and feeding, for a period of at least five consecutive hours, unless prevented by storm or by other accidental or unavoidable causes which cannot be anticipated or avoided by the exercise of due diligence and foresight." The provisions of section 2 are immaterial for our present inquiry. Section 3 provides "that any railroad" engaged in interstate commerce " * * * who knowingly and willfully fails to comply with the provisions of the two preceding sections shall for every such failure be liable for and forfeit and pay a penalty of not less than one hundred nor more than five hundred dollars." Section 4 provides "that the penalty created by the preceding section shall be recovered by civil action. * * *" From the foregoing it appears that section 1 creates a duty to be performed by carriers and that section 3 imposes a penalty not for the failure to perform the duty, but only when the carrier "knowingly and willfully" fails in that regard. The defendant by not denying the averment of the petition in that regard admitted that it "knowingly" failed to unload the stock.

It is contended that the answer puts in issue the allegation of the petition that defendant's failure to unload the stock was willful and the allegation that defendant was not prevented from unloading the

stock by an unavoidable cause which could not have been anticipated by diligence and foresight, and that as a result of these denials of material averments an issue of fact was joined which necessitated the overruling of the demurrer. The answer, after admitting that the stock was not unloaded, and denying that the company's failure to unload was willful or from avoidable cause, proceeded in an unbroken sentence to declare as follows:

"But, on the contrary, avers that the said failure was wholly caused by the great and unusual press of business, * * * which alone caused the said live stock to be confined beyond the time limited by law."

It is a familiar principle of pleading and one repeatedly recognized by this court that a general averment is always controlled and limited by specific allegations on the same subject-matter. Boatmen's Bank v. Fritzlen, 68 C. C. A. 288, 135 Fed. 650, 659; Hayes-Young Tie Plate Co. v. St. Louis Transit Co., 70 C. C. A. 1, 137 Fed. 80.

Applying this rule, the conclusion follows that the denial of willfulness or avoidable cause must be treated as limited or explained by the words which immediately follow it, and that the pleading taken as a whole means that by reason of the alleged great and unusual press of business which "wholly" and "alone" caused the failure to unload the cattle, and for that reason only there was no willfulness, but there was an unavoidable cause.

Does the fact that the defendant, as a sole result of a great and unusual press of business which occasioned delays at its meeting points and inability of its engines to do the work, knowingly confined live stock committed to it for transportation more than 28 hours without unloading it, amount to a denial of the allegation of willfulness? Counsel for defendant contend that the word "willfully" as employed by the statute necessarily implies an evil purpose or bad motive, and have in their brief collected and reviewed many cases dealing with the meaning of this word. We find no occasion, however, to follow them through this maze of authority. The word is here employed in connection, not with a crime or offense malum in se, but with an offense purely statutory subjecting the offender to a civil action only. In view of our former rulings on this question, we are of opinion and so hold that as here employed the word means only the intentional doing of an act forbidden by the statute.

We held in Armour Packing Co. v. United States, 82 C. C. A. 135, 153 Fed. 1, 14 L. R. A. (N. S.) 400, that:

"A simple purpose to do the act forbidden, in violation of the statute, is the only criminal intent requisite to a conviction of a statutory offense which is not malum in se."

The Supreme Court (209 U. S. 56, 28 Sup. Ct. 428, 52 L. Ed. 681), reviewing the same case, said:

"While intent is in a certain sense essential to the commission of a crime, and in some classes of cases it is necessary to show moral turpitude to make out a crime, there is a class of cases within which we think the one under consideration falls, where purposely doing a thing prohibited by statute may amount to an offense, although the act does not involve turpitude or moral wrong."

We approved and applied this definition in the case of Chicago, St. P., M. & O. Ry. Co. v. United States (C. C. A.) 162 Fed. 835, and discover no reason for departing from it in this case. To hold that some evil purpose or bad motive must be shown in order to constitute a cause of action under section 3 of the act of June 29, 1906, would in our opinion thwart the obvious purpose of the legislation. It can hardly be conceived that any reputable carrier would deliberately and designedly because of ill will or other malevolent feeling towards the dumb animals or their owners fail to conform to the reasonable and humane requirement of the law. If the law be operative only to restrain the possible exercise of such evil and perverse disposition, it would have little, if any, scope of operation. The real purpose of the legislation in our opinion was to alleviate the condition of dumb animals in transit. The desire to curtail expense and promote economy of operation naturally encourages indifference to if not a disregard of every impediment to quick and cheap transportation. The act of June 29, 1906, we think, was aimed at this natural propensity, and is a condemnation of indifferent more than malevolent conduct. So far as the dumb animals are concerned, the effect is the same in either case. They would suffer just as much if deprived of rest, water, and food by indifference of the carrier as they would by his malevolence. The meaning we ascribe to the word "willfully" gives a reasonable scope of operation to the act, while the meaning contended for by defendant's counsel practically nullifies it. The answer admits that the defendant knowingly— that is, intentionally—kept the live stock confined in cars without unloading for more than 28 hours, and did this merely because of a great and unusual press of business as there stated. This in our opinion is an admission that it was willfully done within the true meaning of the statute. Otherwise we must concede, which we cannot do, that a mere press of business justifies a disregard of the law.

Did the great and unusual press of business as described in the answer amount as a matter of law to "an accidental or unavoidable cause which could not be anticipated or avoided by the exercise of due diligence and foresight" within the true meaning of section 1 of the act in question? We think not. It might constitute, when taken in connection with other facts and circumstances attending a transportation of live stock, some evidence of such a cause; but in itself it cannot in our opinion constitute that cause. If it could a transportation company would have it in its power to create, ad libitum, a cause which would justify its disobedience of the law. The pleadings do not raise the question whether a press of business may not in some circumstances not reasonably to have been anticipated be so great and unusual as to justify continuous confinement of live stock beyond 28 hours. We therefore refrain from expressing any opinion on that subject. All we are called upon to decide, and all we do decide, is that a great and unusual press of business does not, unexplained and of itself, excuse confinement of live stock beyond the time limited by law.

It results that the facts as pleaded in the answer constitute no defense, and that the Circuit Court erred in overruling the demurrer. The judgment is therefore reversed, with directions to sustain the demurrer.