UNITED STATES v. LEHIGH VALLEY R. CO.

(Circuit Court of Appeals, Third Circuit.    May 5, 1913.)

No. 1,712.

CARRIERS (§ 37*)—INTERSTATE COMMERCE—REGULATIONS—TRANSPORTATION OF ANIMALS — TWENTY-EIGHT HOUR LAW — VIOLATION — "KNOWINGLY AND WILLFULLY."

The Twenty-Eight Hour Law (Act June 29, 1906, c. 3594, §§ 1, 2, 34 Stat. 607, 608 [U. S. Comp. St. Supp. 1911, pp. 1341, 1342]) prohibits carriers in interstate commerce from confining animals in cars, boats, or vessels longer than 28 consecutive hours without unloading for rest, water, and feed, and provides that animals so unloaded shall be properly fed and watered during the rest.    Section 3 declares that any railroad which "knowingly and willfully" fails to comply with the provisions of the act shall be liable to a penalty.    *Held*, that the words "knowingly and willfully" are not synonymous with "negligently," but mean consciously and intentionally; and hence proof that merely warranted an inference that a carrier's employés negligently, but unintentionally, omitted to feed and water certain sheep during the hours of rest, was insufficient to subject it to a penalty.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 95, 927;  Dec. Dig. § 37.*

For other definitions, see Words and Phrases, vol. 5, p. 3939.

Liability of carrier for failure to feed, water, and rest live stock, and for violation of Twenty-Eight Hour Law, see note to St. Joseph Stockyard Co. v. United States, 110 C. C. A. 435.]

In Error to the District Court of the United States for the District of New Jersey; Joseph Cross, Judge.

Action by the United States against the Lehigh Valley Railroad Company to recover a penalty for knowingly and willfully violating the Twenty-Eight Hour Law.    From an order sustaining defendant's motion for judgment non obstante veredicto, the United States brings error.    Affirmed.

The following is the opinion of Cross, District Judge:

This action is based upon what is popularly known as the Twenty-Eight Hour Law (Act June 29, 1906, c. 3594, 34 Stat. 607 [U. S. Comp. St. Supp. 1911, p. 1341]), an act intended to prevent cruelty to animals while being transported in interstate commerce.    The question reserved at the trial was whether the time the animals were confined to the pens of the defendant at Jersey City should be included in the 28-hour period during which the stock was not fed.    The questions of fact as to whether the animals were fed, and whether the defendant knowingly and willfully failed to comply with the provisions of the statute, were submitted to the jury, which found a verdict thereon in favor of the United States.    The pertinent portions of the statute are as follows:

Section 1: "No railroad  *  *  *  carrying or transporting cattle, sheep, swine, or other animals  *  *  *  shall confine the same in cars, boats, or vessels of any description for a period longer than twenty-eight consecutive hours without unloading the same in a humane manner, into properly equipped pens for rest, water, and feeding, for a period of at least five consecutive hours, unless prevented by storm," etc.

Section 2 provides that "animals so unloaded shall be properly fed and watered during such rest, either by the owner  *  *  *  or by the railroad  *  *  *  at the expense of the owner."

Section 3 provides that "any railroad * * * who knowingly and willfully fails to comply with the provisions of the two preceding sections shall for every such failure be liable for and forfeit and pay a penalty of not less than one hundred nor more than five hundred dollars."

The facts so far as we are at present concerned with them, are as follows: The animals, after having been unloaded, fed, and watered at Coxton, Pa., were reloaded by the defendant into its cars at that place at 6:15 p. m., February 18, 1911. At 3:15 p. m., February 19th, they were unloaded into the stock pens of the defendant company at Jersey City, but were not fed. They remained there in the stock pens of the company until February 20th, at which date, at 3:15 a. m., they were loaded on a barge of the defendant and conveyed to their destination, where they were delivered at 8 a. m., of that day. It thus appears that the animals were in charge of the plaintiffs in interstate transportation for a period of 37 hours and 45 minutes, without being fed. During 12 hours of that period, however, the animals were confined in the stock pens of the defendant at Jersey City, and not in its cars, boats, or vessels of any description.

The penalty of section 3 can, as expressly provided, be applied only when the carrier has failed to comply with the provisions of both sections 1 and 2; that is, the carrier must have confined the animals in cars, boats, or vessels for a period longer than 28 consecutive hours without unloading the same into pens for rest, water, and feeding, and it must also have failed to properly feed and water the animals so unloaded during such period of rest. The animals in question were not, however, confined in the cars, boats, or vessels of any description, of the defendant, for a longer period than 21 consecutive hours, or for a longer period in all than 25 hours and 45 minutes during their transportation from Coxton, Pa., to their destination. Consequently there was no infraction of the statute.

The statute under which this action is brought is penal, and must be strictly construed. At all events, it cannot be so construed as to create offenses and inflict penalties not in terms expressed, or necessarily implied from what has been expressed. It seems too plain for argument that no offense is created by this statute which does not contain as one of its elements the confinement of the animals being transported in the cars, boats, or vessels of the carrier, for a period longer than 28 consecutive hours, without unloading, etc. In order to make out a violation of the statute in this case, at least 7 hours of the period during which the animals were unloaded and resting in stock pens must be tacked to the 21-hour period of confinement in the cars of the defendant. Moreover, if we take the total period of confinement in the cars, boats, and vessels of the company, it only amounts to 25 hours and 45 minutes, made up of 21 hours' confinement in its cars and 4 hours and 45 minutes on its barge, which hours of confinement, furthermore, were not consecutive, as provided by the act.

The act neither in terms nor by necessary intendment embraces the case in question. Indeed, its language prohibits the construction which the government seeks to put upon it. If Congress had intended to cover a situation like that here presented, it could easily have done so by prohibiting the confinement in any manner of animals being transported in interstate commerce for a period longer than 28 hours without feeding, watering, and resting them, etc. Confessedly my inclination has been to so construe the act, if possible, as to make it cover the case in question; but it cannot be done, in my judgment, without an exercise of the legislative, rather than the judicial, function.

Accordingly judgment will be entered for the defendant non obstante veredicto.

John B. Vreeland, of Morristown, N. J., for the United States.

Collins & Corbin, of Jersey City, N. J. (George S. Hobart, of Jersey City, N. J., of counsel), for defendant in error.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

J. B. McPHERSON, Circuit Judge. This action against the Lehigh Valley Railroad Company was brought to recover a penalty for "knowingly and willfully" failing to comply with the Twenty-Eight Hour Law of June 29, 1906. We take the following summary of certain undisputed facts from the government's brief:

"On February 17, 1911, 226 lambs were shipped by C. F. and W. F. Pratt over the defendant's railroad, from Batavia, N. Y., consigned to Newton & Co., Jersey City, contained in a car initialed and numbered 'L. V. 89625,' and conveyed over said line of railroad in that car to Jersey City, and thence by a boat known as 'L. V. Barge 503,' owned and used by the company for purposes of transportation, to the Jersey City stockyards at Jersey City.

"It appears that the stock was fed at Coxton, Pa., at which place it was reloaded at 6:15 p. m., February 18, 1911, remaining in the car until 3:15 p. m., February 19, 1911, when the lambs were unloaded into the stock pens of the defendant company at Jersey City, remaining in the pens until 3:15 a. m., February 20, 1911, when they were loaded into the said barge and remained therein until 8 a. m., February 20, 1911, at which said last-mentioned time they were finally unloaded at the stockyards of the Jersey City Stockyards Company at Jersey City, the place of destination. * * *

"The time between the loading at Coxton, Pa., 6:15 p. m., February 18th, and the hour when unloaded into the pens of the railroad company at Jersey City, 3:15 p. m., February 19th, was 21 hours. The stock remained in the pens from 3:15 p. m., February 19, 1911, to 3:15 a. m., February 20, 1911, a period of 12 hours, and they were then loaded into the barge and unloaded therefrom at 8 a. m. on the same day, to wit, February 20, 1911, a period of 4 hours and 45 minutes, making the total period of time from the reloading at Coxton, Pa., to the final unloading at Jersey City, the place of destination, 37 hours and 45 minutes as shown below:

Coxton to Jersey City......................................21 hours
In stock pens.............................................12    "
On barge................................................. 4¾   "
_____
    Totaling ...............................37 hours and 45 minutes
within which period of time the stock was not fed."

The company asked for binding instructions on three grounds:

(1) That the act applies only to the confinement of animals in cars, boats, and vessels, and not to their confinement in stockyard pens.

(2) That no evidence had been offered of a knowing and willful failure to comply with the statute.

(3) That the overwhelming evidence had established the fact of feeding within the statutory period.

The trial judge submitted the second and third questions to the jury, but reserved the first for consideration later. After a verdict in favor of the government, he entered judgment for the defendant on the point reserved, giving the reasons stated in his opinion.

Of course the question before us on this writ is the correctness of the judgment, and if it may properly be supported upon any ground we should affirm it. The company asks for affirmance upon two grounds: (1) For the reasons given by the District Judge; and (2) because no evidence was offered that the company had knowingly and willfully failed to comply with the statute. It is not necessary to consider the first ground, as the second seems to us amply sufficient to support the judgment. We have carefully considered the relevant evidence, which was given by several witnesses whose testimony is

not referred to in the foregoing summary quoted from the government's brief. None of them had any recollection about the particular car in question. Their evidence was mainly devoted to proving the orders in force upon the subject of feeding animals in transit, the means provided by the company for carrying such orders into effect, and the course of conduct customarily followed at the yards in question. This evidence bore also upon the possibility, or probability, that such of the company's servants as were charged with the particular duty involved in the suit had failed for some reason to give the animals food. It appeared that thousands of animals of one kind and another reached the company's yards at Jersey City in the course of a year, but there is no suggestion of any other failure to comply with the law. It would serve no good purpose to detail what the witnesses said upon the foregoing subjects. It is enough to say we think that a careful examination of the stenographer's notes has satisfied us that the evidence can go no farther than to establish negligence in the care of this particular shipment on the part of one or more of the company's servants. The verdict requires us to assume that the lambs were not fed within the statutory period; but we repeat that in our opinion the fact is accounted for by negligence, and cannot be attributed to a "knowing and willful" disregard of duty.

These words mean something more than "negligent." A knowing and willful omission to perform a duty is not, as we think, the same as a merely careless omission. For example: Let us suppose that the man whose duty it was to feed these lambs had learned the length of their confinement from the card accompanying the shipment, but that his attention had been diverted, so that he forgot his task until the period limited by the statute had passed. No doubt this would be negligence, but to call it a "willful" failure of duty seems to contradict one of the essential facts supposed. It is not possible to omit an act knowingly and willfully, unless the act be consciously in the mind; if it be no longer in the mind, it cannot be within the range of either knowledge or intention.

In the absence of better evidence on the subject than was offered by the government, the presumption that the company did its duty and obeyed the statute must prevail. There is really nothing to rebut it, except another and a weaker presumption, namely, the presumption that the lambs were not fed because no report of their feeding appears in the company's records. We say that this presumption is weaker, because it is evident that the absence of the report is susceptible of at least three explanations: (1) That some one knowingly and willfully failed to feed the animals; or (2) that such failure was merely negligent; or (3) that they really had been fed, although the fact had not been reported. With the evidence in this condition, there was nothing to be submitted to a jury.

The courts have not fully agreed in their efforts to define the words under consideration, but we are disposed to adhere to the opinion that "knowingly and willfully" is not synonymous with "negligently." Without quoting from the following cases, we refer with approval to United States v. Union Pacific R. R. Co., 169 Fed. 65, 94 C. C. A.

433; St. Louis, etc., Co. v. United States, 169 Fed. 69, 94 C. C. A. 437; United States v. Stockyards Terminal Co., 178 Fed. 19, 101 C. C. A. 147; St. Joseph Stockyards Co. v. United States, 187 Fed. 104, 110 C. C. A. 432; Chicago, etc., Co. v. United States, 194 Fed. 342, 114 C. C. A. 334; United States v. Sioux City Co. (C. C.) 162 Fed. 556; United States v. Atchison, etc., Co. (D. C.) 166 Fed. 160. For a somewhat different view, see New York, etc., Co. v. United States, 165 Fed. 833, 91 C. C. A. 519, and United States v. Atlantic, etc., Co., 173 Fed. 764, 98 C. C. A. 110.

The judgment is affirmed.