## UNITED STATES v. ILLINOIS CENT. R. CO.

### No. 8380.

Circuit Court of Appeals, Fifth Circuit.

May 26, 1937.

Rene A. Viosca, U. S. Atty., and Robert Weinstein, Asst. U. S. Atty., both of New Orleans, La., for the United States.

Selim B. Lemle, of New Orleans, La., for appellee.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

Suing for penalties under the Cruelty to Animals Act,[1] the United States moved for judgment on the pleadings. This motion overruled and a jury waived, the cause was submitted upon an agreed statement of facts.

The District Judge concluding that the defendant had not, within the meaning of the act, knowingly and willfully failed to comply with its provisions, made findings and conclusions and gave judgment accordingly. This appeal tests whether, upon the facts pleaded, stipulated, and found,[2] judgment for the United States was demanded. In summary, this is the case the pleadings and stipulation made.

The complaint alleged: (1) That the defendant did knowingly and wilfully confine a certain number of cattle in one of its cars for a period of more than 36, to wit, 37 hours, without unloading them. (2) That defendant was not prevented from unloading by storm or other accidental or unavoidable causes which could not have been anticipated or avoided by the exercise of due diligence and foresight. Defendant in its answer (1) admitted that the cattle were actually confined in one of its cars for more than 36 hours;

---

[1] Act of June 29, 1906, chapter 3594, §§ 1-3 and 4 (title 45 U.S.C.A. §§ 71-73 and 74).

[2] These were in effect that the failure to unload within the time allowed was the result, not of deliberate purpose or intent on the part of the carrier or any of its employees to disobey the law, but of the negligent failure of the yardmaster to notify the employee, whose duty it was to unload them, that the car was being placed for unloading.

(2) denied that they were knowingly and willfully so confined; (3) alleged that their overconfinement was due to the negligent oversight of the night general yardmaster, in this; that, though he had, in an earnest and bona fide attempt to comply with the law, taken extra precautions to get the cattle to the place of unloading in time, he had yet, through oversight alone, failed to give notice to the employee whose duty it was to unload them.

By the stipulation it was agreed (a) that there had been 1 hour's overconfinement of the cattle; (b) that defendant was not prevented from unloading the cattle by storm or other accidental or unavoidable cause; (c) that the defendant did not unload the cattle within the 36 hours for the reasons and under the circumstances following, that defendant's night general yardmaster, having received advance information of the approximate time of the arrival of the cattle, had, in order to insure their prompt unloading within the time allowed, procured an extra engine and crew, and upon the arrival of the cars had caused them to be switched and placed in the Crescent City packing yards for unloading within the time allowed therefor by law; that the unloading was delayed, however, an hour beyond the time because the night general yardmaster, though knowing how long the cattle had already been confined, and that they should be unloaded, failed to notify the employee of the defendant, whose duty it was to unload the car, that it was to be placed for delivery. The night yardmaster is now dead.

The District Judge found (1) all the facts stipulated to be true; (2) that the defendant attempted in good faith to comply with the statutory requirement; (3) that its failure to unload the cattle within the time was not knowing and willful; (4) but was due to the negligent oversight of the night yardmaster in failing to notify the unloading employee, although he had made special efforts by using an extra train and crew, to comply with the law. He concluded that "negligence of an employee of a carrier while performing his regular duties is not equivalent to knowledge and wilfullness, as those words are used in section 3 of the Act [45 U.S.C.A. § 73] in question," and that "failure to unload due to such negligence, does not render the carrier liable for the penalty there provided." He further concluded that, though there was actual negligence on the part of the yardmaster, and therefore by imputation, of the carrier, it was not liable for the penalty because its failure to unload the cattle was not knowing and willful within the act.

The United States insists that section 1 of the act (45 U.S.C.A. § 71) imposes an absolute duty to unload within the time allowed, "unless prevented by storm or by other accidental or unavoidable causes which can not be anticipated or avoided by the exercise of due diligence and foresight," and that section 3 imposes an equally absolute liability for penalties in all cases of failure to unload as required by, and except as excused in, section 1, though the failure is not intentional but inadvertent. It insists, in short, that a failure to unload as provided in section 1 is in law the knowing and willful failure required under section 3, though the failure to unload was not intentional or with conscious purpose, but the result of mere inadvertent, and unintentional, oversight. It therefore urges upon us that the carrier, having admitted the nonexistence of any of the excuses provided for in section 1, must stand in judgment, and that to hold otherwise would result in defeating the law by letting in, in every case, the defense of simple negligence. Appellee, on the other hand, with equal vigor insists that the construction the United States contends for in effect reads out of the statute the two words "knowing and wilful," which, having a fixed and settled meaning in law, essentially condition liability to penalties. It therefore urges upon us that, in view of this conditioning, the agreed statement of facts, and the court's findings, no other judgment than one for it could have been entered. It argues that this is so, because (1) the stipulation containing no admission, and there being no evidence, that the failure to unload the cattle was knowing and willful, the United States has wholly failed in its proof of the ultimate facts, knowingness and willfulness, essential to its recovery; United States v. Boston & M. R. R. (C.C.A.) 84 F.(2d) 365, and (2) if the facts agreed to are sufficient to support an inference that the violation was knowing and willful, they are certainly equally, if not more, sufficient to support the opposite inference, and the District Judge, to whom the ultimate issue was submitted, has affirmatively found that the failure to unload was not knowing and willful, but merely inadvertent.

█ We think appellee has the right of it. To take appellant's view we should have to disregard the settled meaning of the words "knowing and wilful" when used in penalty and criminal statutes. To take that view we should have to assume that Congress in section 3 idly used two words of known and settled legal meaning, intending that the section should be read as though they were not in it. To take that view we should have to close our eyes to the obvious distinction which Congress plainly intended and aptly made by the use of the words in question, between the duty to unload unless prevented by causes beyond its control, imposed upon the carrier by section 1, and the liability for penalties imposed upon it by section 3 for knowingly and willfully failing to perform the imposed duty.

█ There is some difference of opinion in the authorities as to the meaning and intent of the act. A few decisions [3] have taken the view of it the United States urges upon us. The current of authority, however, runs strongly the other way.[4] This is in accordance with the general rule that the word "wilfully" when used in statutes of this kind, has the well-defined meaning of deliberate and conscious purpose. It gives effect to the view that statutes in which it is found subject to penalty or punishment only those who deliberately and consciously, that is, with set purpose, do what they are forbidden by the statutes to do. Under that view such statutes do not subject to penalties those who, though they violate them, do so unintentionally through oversight, or simple negligence.

In Chicago, B. & Q. Ry. Co. v. United States (C.C.A.) 194 F. 342, 343, it was said of "wilfully" as used in this statute:

" 'Wilfully' means 'purposely or obstinately, and is designed to describe the attitude of a carrier who, having a free will or choice, either intentionally disregards the statute or is plainly indifferent to its requirements.' "

In United States v. Lehigh Valley R. Co. (C.C.A.) 204 F. 705, 708, it was said of the same statute:

"The verdict requires us to assume that the lambs were not fed within the statutory period; but we repeat that in our opinion the fact is accounted for by negligence, and cannot be attributed to a 'knowing and willful' disregard of duty.

"These words mean something more than 'negligent.' A knowing and willful omission to perform a duty is not, as we think, the same as a merely careless omission."

In United States v. Murdock, 290 U.S. 389, 394, 54 S.Ct. 223, 225, 78 L.Ed. 381, it is said of "wilfully" when used in a penal statute:

"The word often denotes an act which is intentional, or knowing, or voluntary, as distinguished from accidental. But, when used in a criminal statute, it generally means an act done with a bad purpose * * * without justifiable excuse * * * stubbornly, obstinately, perversely * * * or conduct marked by careless disregard whether or not one has the right so to act," citing, among others, United States v. Philadelphia & R. Ry. Co. (D.C.) 223 F. 207.

In Hargrove v. United States (C.C.A.) 67 F.(2d) 820, 821, 823, 90 A.L.R. 1276, in a criticism of the charge of the trial court, under a statute making willfullness an element of the offense, it was said:

"The court here fell into the error of not distinguishing between the elements of an offense, where the statute simply denounces the doing of an act as criminal, and where it denounces as criminal only its willful doing. In the first class of cases, especially in those offenses mala prohibita, the law imputes the intent. * * * Had the prosecution here been under such a statute, the charge of the court would have been unexceptionable. In the second class of cases, a specific wrongful intent, that is, actual knowledge of the existence of obligation and a wrongful intent to evade it, is of the essence."

The judgment was right. It is affirmed.

[3] United States v. St. Joseph Stockyards Co. (D.C.) 181 F. 625; United States v. Atlantic Coast Line Ry. Co. (C.C.A.) 173 F. 764; Montana Cent. Ry. Co. v. United States (C.C.A.) 164 F. 400.

[4] United States v. Boston & M. R. R. (C.C.A.) 84 F.(2d) 365; United States v. Lehigh Valley R. Co. (C.C.A.) 204 F. 705; United States v. Southern Ry. Co. (D.C.) 1 F.(2d) 607; St. Louis Merchants' Bridge Terminal Ry. Co. v. United States (C.C.A.) 209 F. 600; St. Louis & S. F. R. Co. v. United States (C.C.A.) 169 F. 69; St. Joseph Stockyards Co. v. United States (C.C.A.) 187 F. 104; Oregon-Washington R. & Nav. Co. v. United States (C.C.A.) 205 F. 337.