**ARROW DISTILLERIES, Inc., v. ALEXANDER, Federal Alcohol Adm'r.**

**No. 6834.**

Circuit Court of Appeals, Seventh Circuit.

Feb. 1, 1940.

Rehearing Denied Feb. 29, 1940.

John A. Nash, of Chicago, Ill., Horace J. Donnelly, Jr., and Julian B. Venezky, both of Washington, D. C., George Shurtleff, of Peoria, Ill., for petitioner.

Herbert Borkland, Sp. Asst. to Atty. Gen., Smith R. Brittingham, Jr., and Seymour D. Lewis, Sp. Attys., both of Washington, D. C., Thurman Arnold, Asst. Atty. Gen., Phillip E. Buck, Gen. Counsel, Federal Alcohol Administration, Charles R. Wharton Smith, Asst. Gen. Counsel, Fed-

eral Alcohol Administration, and W. A. Russell and Merton B. Tice, all of Washington, D. C., Attys., Federal Alcohol Administration, for respondent.

Before EVANS, TREANOR, and KERNER, Circuit Judges.

TREANOR, Circuit Judge.

Petitioner, an Illinois corporation, has been engaged continuously for several years in the business of rectifying, distilling, bottling, warehousing and wholesaling alcoholic beverages under basic permits issued to petitioner by the Federal Alcohol Administration. These permits, Nos. R-224, D-688, and BR-224, cover the operations of rectifying, distilling and bottling, respectively. The Federal Alcohol Administration instituted a proceeding to suspend the basic permits of petitioner for alleged violations of Secs. 4(d), 5(e) and 5(f), respectively, of the Federal Alcohol Administration Act of 1935, as amended,[1] and of regulation No. 5 promulgated by the Alcohol Administration.

As required by Section 4(d) of the Act each permit was conditioned upon compliance by petitioner with Sections 5 and 6 of the Act relating to unfair competition and unlawful practices, and to bulk sales and bottling; also the twenty-first amendment, U.S.C.A., and the laws relating to the enforcement thereof, and all other laws relating to distilled spirits, wine, and malt beverages. The complaint against petitioner charged violation of the conditions of the basic permits in the following respects: (1) petitioner had sold certain misbranded products in interstate commerce; (2) petitioner had sold certain whiskeys in interstate commerce without first securing therefor certificates of label approval; and (3) petitioner had violated Sec. 3318 of the Revised Statutes of the United States (26 U.S.C.A. § 1208) by falsifying certain records required to be kept under internal revenue laws and regulations. The complaint charged that the alleged acts constituted a wilful violation of the conditions of the basic permits and of the provisions of the Federal Alcohol Administration Act, as amended. The report of the hearing officer included findings of fact and conclusions of law supporting the charges, and

the respondent entered a suspension order in harmony with the findings of the hearing officer.

· Under authority of Section 4(h) of the Alcohol Administration Act petitioner has appealed to this Court by filing its petition to modify or set aside respondent's order.

The questions presented by this appeal may be stated as follows:

1. Is the Federal Alcohol Administration Act constitutional?

2. Was there substantial evidence to support the findings of the Alcohol Administrator?

3. Did the respondent, Alcohol Administrator, have jurisdiction as a matter of law to suspend petitioner's permits?

4. Were certain forms which were required to be kept by the Treasury Department Regulations, and certain money order records of the Post Office Department, properly received in evidence? ·

5. Was petitioner accorded a full and fair hearing?

■ Petitioner argues that the twenty-first amendment has transferred to the states "complete and exclusive control over commerce and traffic in intoxicating beverages unlimited by the commerce clause" and has deprived Congress of its power under the Constitution to enact the present statute as a regulation of interstate commerce in intoxicating liquors.

Section 2 of the twenty-first amendment[2] gives effect to any and all state laws prohibiting the transportation or importation of intoxicating liquors into a state in violation of the laws thereof. But there is no provision in the amendment which purports to restrict the power of Congress over commerce in intoxicating liquors when such commerce is carried on without the violation of state laws, or to deny to Congress the power to legislate in aid of the state prohibitions. Substantially the same contention which petitioner makes here was urged upon the Supreme Court in the case of William Jameson & Co., Inc. v. Morgenthau,[3] and the Supreme Court said that it saw "no substance in this contention."

■ We are of the opinion that the enactment of the Federal Alcohol Admin-

---

[1] 49 Stat. 977, 1965; 27 U.S.C.A. § 201 et seq.

[2] "The transportation or importation into any State, Territory, or possession of the United States for delivery or use

therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

[3] 307 U.S. 171, 59 S.Ct. 804, 805, 83 L. Ed. 1189.

istration Act was a valid exercise by Congress of its constitutional powers to regulate interstate and foreign commerce and to protect the revenue; also we are of the opinion that the Act contains no unconstitutional delegation of legislative power. It is not necessary that the Act as a whole rest upon a single power of Congress; and according to the language of Sec. 3 of the Act (27 U.S.C.A. § 203) Congress was exercising its power to protect the revenue derived from distilled spirits, wine, and malt beverages, to regulate interstate and foreign commerce, to enforce the postal laws in respect thereto, and to enforce the twenty-first amendment.

Undoubtedly Congress has the power to enforce the postal laws and to enforce the twenty-first amendment in respect to transportation or importation of intoxicating liquors into states in violation of the laws thereof. The twenty-first amendment authorizes Congress to take affirmative action to make effective the prohibition of the amendment against the importation or transportation of alcoholic beverages into states in violation of the laws thereof. The power to regulate production of intoxicating liquors for the purpose of protecting revenue is not detracted from by the twenty-first amendment, but is, in fact, supplemented thereby. Under the twenty-first amendment Congress may authorize regulations affecting production for the purpose of making effective the protection which the twenty-first amendment gives to the states even though such regulations may not contribute to the protection of the revenue.

Petitioner urges that the Act seeks to regulate purely intrastate transactions through the device of granting permits which cover all the production activities which ordinarily are considered intrastate; and since the permits, so petitioner argues, purport to authorize production activities for all sales, whether intrastate or interstate, it follows that a revocation, or suspension, of a permit will prevent petitioner from producing intoxicating liquors for sale in intrastate trade. Whether the provisions of the Act requiring one to receive a permit before engaging in the operations of rectifying, distilling, and bottling would be invalid as applied to one who engages in those operations solely and strictly for purposes of intrastate trade need not be considered in deciding this case since petitioner admittedly is engaged in interstate commerce. Petitioner owns and operates its plant in Illinois where it receives shipments of distilled spirits which are distilled outside the state of Illinois and which petitioner rectifies, blends, and warehouses and bottles for transportation and wholesale to customers outside of Illinois.

We are of the opinion that it is clearly within the power of Congress to make it unlawful for one to engage in the operations of rectifying, distilling and bottling alcoholic liquors for interstate trade without first obtaining a permit from the United States. Also we think Congress has the power to condition a permit upon compliance with the requirements of the Alcohol Administration Act, the twenty-first amendment, and laws relating to the enforcement thereof, and to all other federal laws relating to distilled spirits, wine, and malt beverages.

It is well settled that Congress may regulate activities and transactions, intrastate in character, if they are so intimately related to interstate commerce that the latter cannot be regulated effectively without regulation of the related intrastate activities and transactions. In Currin v. Wallace,[4] the Supreme Court declared that "the fact that intrastate and interstate transactions are commingled on the tobacco market does not frustrate or restrict the congressional power to protect and control what is committed to its own care;" and the Court further stated that "the transactions on the tobacco market were conducted indiscriminately at virtually the same time, and in a manner which made it necessary, if the congressional rule were to be applied, to make it govern all the tobacco thus offered for sale."

In view of the history of legislative and administrative efforts to regulate the evils which are inseparable from unregulated and unrestricted traffic in intoxicating liquors, the regulatory device of license or permits is an obvious and reasonable one. The report of the Ways and Means Committee on the proposed Federal Alcohol Administration Act contains a sufficient justification for the utilization of the drastic permit system found in the Act. At any rate, in the absence of some showing to the contrary, we must assume the soundness of the legislative finding that effective regulation required the use of

---

[4] 306 U.S. 1, 59 S.Ct. 379, 385, 83 L.Ed. 441.

the permit system, including the power of suspension of operations in case of violations of the Act or of other laws of the United States relating to the traffic in alcoholic liquors.

■ Petitioner urges that the Act delegates legislative power without fixing standards and, therefore, is unconstitutional. The particular actions for which petitioner contends there are no standards are (1) determining the period of suspension of a permit; (2) prescribing labeling regulations, and (3) compromising violations.

The Act provides for revocation or suspension of permits, and also specifies that for a first offense there shall be only suspension. Petitioner argues that respondent could order a suspension of ninety-nine years or for one hour and, in effect, could impose a penalty of revocation for a first offense. Since the Act provides for full judicial review of the Administrator's order, it is clear that reasonableness of the order is a proper question to present to the reviewing court. The Administrator is not free to specify what acts or conduct shall be the basis of a suspension or revocation. Section 4(e) states the basis of revocation or suspension. The clause involved in this proceeding authorizes the Administrator to revoke or suspend if the Administrator finds that the permittee has "wilfully violated any of the conditions thereof," and further provides that the permit shall be subject only to suspension for a first violation. The offense for which suspension may be imposed is clearly designated and only the length of the period of suspension is left to the discretion of the Administrator, and as already indicated, the section must be construed to require the Administrator to exercise sound discretion in view of the facts of the case.

Section 5(e) of the Act prescribes a reasonably definite standard to guide the Administrator in prescribing labeling regulations. This section provides for such label regulations as will prevent deception of the consumer with respect to products or the quantity or quality thereof, and such as will prohibit, irrespective of falsity, statements likely to mislead the customer. In general, the authority of the Administrator is limited to such regulatory action, with respect to labeling, as will protect consumers from false, misleading or inaccurate representations and protect competitors from unfair trade practices in the use of labels. Decisions of the Supreme Court have upheld administrative standards which clearly are not more definite or restrictive than the one involved here.[5]

As to petitioner's contention that the authorization of the commissioner to compromise liability is invalid it is sufficient to say that the case presents no question of the exercise of that power.

■ Section 2(f) authorizes the Administrator, with the consent of a department or agency, affected, to utilize "the services of any department or other agency of the Government to the extent necessary to carry out his powers and duties," and petitioner urges that this provision confers upon the Administrator legislative powers to fix additional and unusual penalties and punishment, within his discretion, and that it is so indefinite as to prevent a citizen from being apprised of penalties which might be incurred as a result of his actions. We are unable to find in the provision any authorization to the Administrator to utilize the penalties provided in other acts of Congress which have prescribed the powers and duties of other departments or agencies. We think it is obvious that Sec. 2(f) merely authorizes, as it says, the use of the services of other agencies or departments by the Administrator to carry out his own powers and duties provided for in the Alcohol Administration Act.

The order of suspension was predicated upon the following findings:

1. Petitioner falsified certain records known as 52-B records which are required to be kept by holders of basic permits.

2. Petitioner misbranded bottles of whiskey sold in interstate commerce by misstating the age.

3. Petitioner bottled and sold spirits in interstate commerce in bottles which carried labels for which the petitioner had received no certificate of label approval.

4. Said action constituted wilful violations of the conditions of petitioner's permits.

Petitioner asserts that there was no sub-

---

5 Buttfield v. Stranahan, 192 U.S. 470, 496, 24 S.Ct. 349, 48 L.Ed. 525; Federal Radio Commission v. Nelson Bros. Co., 289 U.S. 266, 285, 53 S.Ct. 627, 77 L.Ed. 1166, 89 A.L.R. 406; Avent v. United States, 266 U.S. 127, 130, 45 S. Ct. 34, 69 L.Ed. 202; United States v. Grimaud, 220 U.S. 506, 521, 31 S.Ct. 480, 55 L.Ed. 563.

stantial evidence to support the findings. We shall first consider the finding of falsification of records.

Section 4(h), which authorizes appeal, provides that the finding of the Administrator as to the facts, if supported by substantial evidence, shall be conclusive. Consequently, our investigation is limited to the single question of whether a finding is supported by substantial evidence.

Respondent found that petitioner during the period from November 23, 1935, through December, 1936, made false entries upon its 52-B records; such false entries purporting to show sales of large quantities of distilled spirits to Rogers Bros., wholesale dealers at Hickman, Kentucky, whereas said sales were never made by the petitioner to the said Rogers Bros. but were in fact made to other persons. Respondent also found that petitioner from November 23, 1935, through December, 1936, failed to make entries on "diverse and numerous occasions on its 52-B records recording sales of whiskey actually made by it." There was substantial evidence tending to establish the following facts:

Petitioner sold distilled spirits to certain parties, known as and referred to in the briefs as "bootleggers", with the knowledge that such spirits were to be used in violation of the laws of Iowa. In order to conceal such sales petitioner made arrangements with Rogers Bros. in Kentucky whereby the latter would show on its 52-A records (records of incoming or receiving liquor) that it had received the liquor which actually had been sold to the illegal traffickers. Rogers Bros. received compensation for this service. When petitioner made a sale to the actual purchasers it sent an invoice of the merchandise to Rogers Bros. who in turn made out and pre-dated an order to petitioner for the goods shown in the invoice. Petitioner's 52-B outgoing records showed that the sale was made to Rogers Bros.

Among the witnesses whose testimony tended to establish the foregoing course of conduct by petitioner were the bookkeeper of Rogers Bros., the owner of Rogers Bros., the shipping clerk of Rogers Bros. and the bootleggers. One of the bootleggers testified concerning his conversation with a Mr. Newman who was vice president of petitioner company. He testified that he informed Newman that he was "bootlegging liquor" and that he was from Iowa. He also testified that Newman stated that he could not sell the witness any alcohol since Iowa was a dry state, but that he would sell it and bill it to Kentucky. The witness further testified that he made purchases "about every week to ten days;" that the invoices for his purchases were made out to Rogers Bros. and he identified two invoices made out to Rogers Bros. as invoices for merchandise which he had purchased. Petitioner did not call Newman as a witness nor offer any reason for not calling him. It is true that petitioner offered evidence tending to contradict the testimony offered by respondent but the evidence tending to support the finding goes far beyond the minimum requirement of "any substantial evidence."

The Administrator's finding that the petitioner had sold and delivered for shipment in interstate commerce certain whiskey which was misbranded in respect to age is supported by substantial evidence. The evidence furnished by government records was sufficient to support the finding. Petitioner does not question that the history of the whiskey as disclosed by the government records shows the whiskey to be of an age less than that stated on the labels affixed to the bottles; but petitioner contends that the certified government records are erroneous and lose their probative value because of certain inconsistencies between the government records and petitioner's 52-B records. The vital information is furnished by form 230. The government's representative responsible for this record is the storekeeper gauger who obtains the pertinent information from the producing company. This information is transcribed on to form 230 and signed by the proper company employee. After this is done the gauger signs the form. The position of petitioner is in substance that the government's form 230 records, which the petitioner's agent represented to be correct, must lose their probative value because they are inconsistent with petitioner's 52-B records which, petitioner claims, are supported by memoranda and work sheets in possession of petitioner. Certainly the government records do not lose their probative value as against petitioner's 52-B records and any memoranda or work sheets in the possession of the petitioner unless the petitioner is in a position to show that its own agent furnished wrong information when he filled in the date of the bottling on the 230 forms. At the most, in the

instant case, a question of conflict of evidence was presented to the hearing officer and there is in the record no basis for our holding that he was not justified in accepting the government record.

In respect to the charge that petitioner used labels without first securing a certificate of label approval, petitioner does not deny that it made use of labels that have not been approved. It is petitioner's position, however, that it "had received the certificates of approval for similar labels." We think it is clear from the provisions of the Act under Sec. 5(e) that a certificate of label approval covers only identical labels. It is the duty of the Administrator to determine whether or not proposed labels comply with the requirements of the Act and of regulations made thereunder; and such duty cannot be performed for him by the bottler.

Petitioner contends that the Administrator had no jurisdiction as a matter of law to make a finding that petitioner had violated Section 3318 of the Revised Statutes of the United States and to predicate a suspension order in part upon such finding. Section 3318 clearly is included in the language of Section 4(d) of the Federal Alcohol Administration Act.[6] Section 4(d) provides that a basic permit shall be conditioned upon the compliance with "all other Federal laws relating to distilled spirits, wine, and malt beverages, including taxes with respect thereto." But petitioner argues that a revocation of petitioner's basic permit constitutes an added penalty because of its violation of Section 3318 and that such a result amounts to granting to the Administrator the power indirectly to enforce the revenue laws of the United States; and petitioner urges that it was not the intention of Congress to confer this power upon the Administrator. No doubt it was not the specific intention of Congress to authorize the administrator to enforce Section 3318; but it was clearly the indicated intention of Congress to authorize the Administrator to enforce the provisions of the Federal Alcohol Administration Act, and one of the devices provided to give effect to that intention was, the revocation or suspension of permits for failure to comply with "all other Federal laws relating to distilled spirits", within which class of laws falls Section 3318 of the Revised Statutes. Also it is impossible to escape the conclusion that one of the purposes of Congress in authorizing the suspension or revocation of a permit for violation of any federal laws "relating to distilled spirits, wine, and malt beverages, including taxes with respect thereto" was to encourage compliance with revenue laws. We cannot agree that a suspension or revocation of a permit in accordance with provisions of the Federal Alcohol Administration Act constitutes the imposition of an added penalty under Section 3318 of the Revised Statutes contrary to the intention of Congress.

Petitioner also contends that "the gist of the offense covered by Section 3318 is an intent to defraud the revenue of the United States." If the foregoing is a correct statement of law it follows that petitioner could not be found to have violated Section 3318 in the absence of a finding of an intention "to defraud the revenue." In our opinion the language of the Act does not justify the construction put upon it by petitioner and the decisions of Federal courts, which directly concern the section, support the conclusion that it was not necessary to prove an intent to defraud in order to establish a violation of the provisions of the section.

In addition to the foregoing, petitioner further contends that "even if the Alcohol Administrator did have jurisdiction any alleged offense by petitioner under the statute was compromised with the Alcohol Tax Unit of the Treasury Department before the commencement of the instant proceeding."

The report of an inspector as of December 15, 1936, shows that the petitioner had failed to make required entries on record 52-A from and after December 10, 1936, and on record 52-B from and after December 7, 1936. This report shows that the petitioner "completed making the entries in 52-A at 12:45 P. M. and on record 52-B at 2:00 P. M." on December 15, 1936. We are of the opinion that the records of the Alcohol Tax Unit and the subsequent cor-

---

6 Section 3318 contains the following provision: "Every rectifier and wholesale liquor dealer shall keep daily, at his place of business * * * a record of distilled spirits received and disposed of by him * * * in such form and under such rules and regulations as the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, may prescribe. * * *" June 26, 1936, Sec. 411, 49 Stat. p. 1962, 26 U.S.C.A. § 1208.

respondence between the petitioner and the district supervisor of the Alcohol Tax Unit, as well as communications and records relating to petitioner's offer for a compromise, clearly reveal that the offer of compromise which was made and accepted was to compromise the violations of Section 3318 which consisted of failure to make required entries in form 52-A and in form 52-B between the dates of December 10 and 15 and December 7 and 15 respectively. It is claimed by the petitioner that its offer in compromise was "for all violations of Section 3318, Revised Statutes from August 4, 1936 up to January 16, 1937," but the evidence in the record does not support such contention.

It was a question of fact whether the offer of compromise which was made and accepted covered only failure to make required entries for the period from December 7 to December 15, 1936, and the evidence was sufficient to support a finding that it was so limited; and, also, that no delinquencies or falsifications or other violations on the part of petitioner for the year 1936, in connection with petitioner's 52-B records, were compromised by the making of the offer and its acceptance.

Petitioner contends that certain exhibits were improperly admitted in evidence. These exhibits included (1) internal revenue forms 1520, 230, 52-A and 52-B, and (2) certified copies of money-order records.

■ As to the internal revenue forms petitioner argues that records filed by it under compulsion of law cannot be used to incriminate it in a proceeding of this kind. Form 1520 records are filed by an employee of the government and supply information respecting the original production of whiskey by the distiller and afford a record of the serial number of the barrels in which it was stored for ageing. Form 230 is an application for permission to dump and bottle whiskey and is filled out by a rectifier or bottler. Forms 52-A and B are filed by purchasing wholesalers and by the bottler, respectively. The grounds of petitioner's objection cannot apply to form 1520 records which were filed by an employee of the government in the course of his duties, nor to form 52-A records which are filed by dealers who purchased from petitioner. As to form 52-B records petitioner's contention is, in substance, that the government cannot introduce in evidence in a proceeding against petitioner, predicated upon the falsification of records,

the very records which petitioner is charged with having falsified. Form 230 records contain no information of such a confidential or secret nature as to justify exclusion on the ground that disclosure of their contents would result in special injury to the petitioner or run counter to any recognized public interest.

We must recognize that one of the purposes of requiring the preparation and filing of these form records is to make available to the United States information that will enable the departments and officials charged with the enforcement of all "federal laws relating to distilled spirits, wine, and malt beverages, including taxes with respect thereto" to perform their legal duties. We fail to find anything in the nature of the information which is contained in these form records or in the purpose for which this information is required which would have justified their exclusion as evidence in the instant proceeding.

■ The certified copies of money-order records were introduced in evidence for the purpose of corroborating the testimony of certain witnesses that they had been paid by petitioner by means of postal money-orders. Petitioner insists that these copies were improperly released by the Post Office Department in violation of postal laws and regulations. It is true that Section 702 of the postal laws and regulations prohibits the giving of information concerning mail matter "to unauthorized persons" and the regulation clearly intends to prohibit general disclosure of such information. Paragraph 2 of Section 1404 of the laws and regulations prohibits the disclosing of information concerning money-orders by postmasters and postal employees except to certain designated persons "or under special instructions from the department." In the instant case the certificate which certified that the photostats were true copies of the original coupons of the money-orders in question was signed by "W. W. Howes, acting Postmaster General of the United States of America," and the certificate which certified the photostats to be true copies of the original applications for the money-orders was signed by "Ramsey S. Black, Acting Postmaster General of the United States of America." We think there was no legal impropriety involved in utilizing the photostats as evidence.

■ By the terms of the Act a finding "that the permittee has wilfully violated

\* \* \* one or more of the conditions thereof \* \* \*" is required. Such a finding was made by the respondent. But petitioner attacks this finding on the ground of lack of evidence. It is the petitioner's contention that wilfullness necessarily includes the element of evil motive, or bad intention, and that there was no evidence of such motive or intention on the part of petitioner. Petitioner cites United States v. Murdock[7] which clearly announces that the word "wilfully" when used in a criminal statute generally means that the act constituting an offense must be "done with a bad purpose." But the cases recognize that the purpose of a statute is material to the determination of the meaning of "wilfully" as used in the statute. In the case of United States v. Illinois Central R. R. Co.[8] a statute which was under consideration imposed a penalty upon railroads for "knowingly and wilfully" confining cattle for more than a stated number of hours without food or water. The penalty or fine was recoverable by the United States in a civil action. The Supreme Court quoted with approval a discussion by the Circuit Court of Appeals for the Fifth Circuit, 90 F.2d 213, of the word "wilfully" as used in the statute before the Court. The language quoted by the Supreme Court stated that "wilfully" did not mean with intent to injure the cattle or to inflict loss upon their owner, but did mean "purposely or obstinately;" and it was further stated that the word was "designed to describe the attitude of a carrier, who, having a free will or choice, either intentionally disregards the statute or is plainly indifferent to its requirements."[9] In the course of its opinion the Supreme Court pointed out that "in statutes denouncing offenses involving turpitude, 'wilfully' is generally used to mean with evil purpose, criminal intent or the like;" but that "in those denouncing acts not in themselves wrong, the word is often used without any such implication."

In view of the nature and the purpose of the Alcohol Administration Act we are of the opinion that the phrase "wilfully violated" is satisfied by an intentional doing of the things which the Act denounces or an intentional refraining from doing the things which the Act requires. But if "wilfully" is assumed to mean "with evil intent" we believe that the element of wilfulness which characterized petitioner's acts satisfies the test of wilfulness which in the Murdock opinion the Supreme Court stated was applied generally in criminal offenses. The evidence upon which respondent-administrator necessarily relied in order to make his findings carried the reasonable inference that petitioner deliberately engaged in a course of conduct which petitioner must be charged with knowing violated Section 3318 of the Revised Statutes and regulations relating to misbranding and labeling. For example the evidence tending to prove falsification of records relating to alleged transactions with bootleggers doing business in Iowa reasonably required an inference of fact that petitioner, through its officers, caused its records to be falsified for the purpose of concealing its transactions with the bootleggers who were transporting liquor into Iowa in violation of the laws thereof.

The testimony, if believed, which is favorable to respondent's findings, compelled the conclusion that petitioner, for its own advantage, acted in bad faith and knowingly violated pertinent statutory provisions and administrative regulations.

Petitioner insists that it was not accorded a full and fair hearing. We have examined the specific instances of alleged biased conduct on the part of the hearing officer. After reading those portions of the record which in any way bear upon the question we conclude that the hearing met the requirements of a full and fair hearing.

The order of the Administrator is affirmed.

[7] 290 U.S. 389, 54 S.Ct. 223, 225, 78 L.Ed. 381.

[8] 303 U.S. 239, 58 S.Ct. 533, 535, 82 L.Ed. 773.

[9] St. Louis & S. F. R. Co. v. United States, 8 Cir., 169 F. 69.