## BRINK v. UNITED STATES.

### No. 9795.

Circuit Court of Appeals, Sixth Circuit.

April 2, 1945.

Before SIMONS, ALLEN, and McALLISTER, Circuit Judges.

SIMONS, Circuit Judge.

The appellant was convicted on three counts of an indictment, sentenced to two years' imprisonment on each count, to run concurrently, and fined $9000. The several counts charged him, as a wholesale liquor dealer, with unlawfully, wilfully, and feloniously refusing and neglecting to make and keep records of the sale and disposition of distilled spirits on "Forms 52–A, 52–B, or 338," as prescribed by the Commissioner of Internal Revenue, pursuant to § 2857 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 2857. He complains of lack of certainty in the indictment, exclusion of evidence, the charge of the court, and, in general, the unfairness of the trial and the severity of sentence.

■ With the single exception, presently to be discussed and which, in our judgment, constitutes error requiring remand for new trial, it may be said at the outset that the district judge was meticulously careful in preserving the rights of the appellant and the fairness of the proceedings. The exception is, however, important, and whether sufficiently saved or not, so vital a matter to the appellant, in view of the punishment imposed, that it is within our province to correct it. Wiborg v. United States, 163 U.S. 633, 656, 16 S.Ct. 1127, 1197, 41 L. Ed. 289; Clyatt v. United States, 197 U.S. 207, 221, 222, 25 S.Ct. 429, 49 L.Ed. 726; Williams v. United States, 8 Cir., 158 F. 30, 36.

■ The Federal Alcohol Administration Act, 27 U.S.C.A. § 201 et seq. together with 26 U.S.C.A. Int.Rev.Code, § 2800 et seq., constitute a comprehensive scheme for the regulation and taxation of all transactions in distilled spirits, various provisions of the latter being in the nature of a revision of earlier statutes in force prior to the outlawing of liquor by the Eighteenth Amendment to the National Prohibition Law. In view of their nature and purpose their provisions do not speak in terms so prohibitorily absolute as, in an enactment which penalized a traffic currently conceived to be inimical to public and private morality, were deemed to be appropriate. So when § 2857 provides penalties to be imposed upon a wholesale liquor dealer "who refuses or neglects to keep such records in the form prescribed by the Com-

Sawyer A. Smith, of Covington, Ky. (Sawyer A. Smith and H. W. Vincent, both of Covington, Ky., on the brief), for appellant.

Claude P. Stephens, of Lexington, Ky. (Claude P. Stephens and Ben L. Kessinger, both of Lexington, Ky., on the brief), for the United States.

missioner," failure to comply must be wilful and intentional. Arrow Distilleries v. Alexander, 7 Cir., 109 F.2d 397, 406; United States v. Monarch Distributing Co., 7 Cir., 116 F.2d 11, 13. It is a construction warranted by the language used, the scope and intent of the enactment, and the fact that it no longer expresses a national policy to control appetite by law.

The appellant owns and operates "Lookout House," an elaborate nightclub near Covington, Kentucky. In 1943, conceiving that there would be a shortage of liquors due to conversion of distilleries to alcohol production for munition purposes, and desiring to assure himself of an adequate supply of liquor, he arranged for the purchase of $100,000 worth of whiskey warehouse receipts through the Dixie Distributing Company, a wholesale liquor dealer in Covington. He advanced about $30,000 of his own funds for that purpose, and the whiskey was either bottled or placed in bond. Some of it was delivered to him in June, 1943, but in that month three retail dealers in Covington, being themselves short of liquor, each obtained from him in the neighborhood of 20 cases. The appellant contended that these were loans to cover an exigency and were to be repaid in kind. When it became evident, however, that they could not so be repaid, the appellant accepted the O. P. A. ceiling price for the liquor. There is no proof that he profited by the transactions. One of the dealers advised him that he should have a wholesaler's stamp. He accordingly bought one from the Collector, for the year beginning July 1, 1943, and later bought one for the month of June, paying a penalty because of its late purchase. In July the Collector's office notified him that he was also required, under the law, to have a basic permit as a wholesale liquor dealer. The appellant promptly applied for such permit, but his application was eventually denied.

On August 6, Greene, a government investigator, advised the appellant that he would have to keep records of his wholesale dealings on Forms 52–A and 52–B, and advised him also that until the form books were obtained for that purpose, that he was to keep memorandum records. On August 27 another investigator, Hickerson, again told the appellant to get the forms, and at that time saw the pad upon which he was keeping his sales records, although apparently he did not examine it closely.

A day or two later the appellant obtained a form book and his bookkeeper transferred the records to it. On October 23, the appellant's application for a basic permit was denied, and he was instructed to discontinue wholesale dealings, which he claims he has done.

The appellant has been operating "Lookout House" for many years, selling distilled spirits at retail. His business depended largely upon his ability to supply customers with whiskey, the sales of which accounted for about 75 per cent of his receipts. He says that in June, 1943, it was almost impossible to buy a bottle of whiskey in the entire State of Kentucky, and his arrangement with the wholesaler was for the purpose of insuring his supply. He had no intention of becoming a wholesaler of this liquor, and knew nothing about the requirements of the law respecting wholesale licenses and basic permits. The word got out, however, that he had whiskey while nobody else had any, and many people came to him to ask about getting it. When he obtained the wholesaler's stamp at the Collector's office, and paid for it, he was told that that was all that was required, but after writing the Collector and asking for further instructions, he received a basic permit form letter with an application which he immediately executed and returned to the Collector's office. He heard nothing further about it until the investigators called. Hickerson told him that he saw no reason why he should not get a basic permit, and that he had nothing to worry about. When he told Hickerson about his loans of liquor in June, Hickerson advised him to get a wholesaler's stamp for that month, and collected the money for it.

Upon the basis of this evidence the defense was that if the appellant had not strictly complied with the regulations of the Commissioner in the keeping of records, his failure to comply was neither wilful nor intentional, without purpose to evade the law or defeat the collection by the government of revenue; that his memoranda were in substantial, if not in strict compliance with the regulations; that they were kept upon the advice of agents of the government, and transferred to the required forms as soon as such forms were obtainable. It may be conceded that, from the evidence, the jury might have drawn the inference that there was no substantial compliance with the law or regulation, and

that failure was wilful and intentional, but that issue, upon an examination of the record, was not submitted to the jury.

It is true that in respect to each count of the indictment charging a sale or disposition of distilled spirits, the court, in the language of the indictment, charged that the appellant was accused of unlawfully, wilfully, and feloniously refusing and neglecting to make and keep a record of such sale or disposition, but this was immediately followed by a direction that if the jury believed he failed to keep such records on all the forms, or on any of them, it was obliged to find him guilty. In colloquies with counsel in the presence of the jury during the trial, the court repeatedly observed that if the appellant failed to keep the records as required by law, he "violated the law," and in his instructions to the jury it is made clear that if there were no exact compliance the appellant was guilty. "It did not meet the requirements of the law when he wrote it down on the back of a pad or an envelope."

■ The net result of the court's instructions and observations was that the jury was led to believe that only literal and complete compliance with the regulations could defeat the charges laid in the indictment, that substantial compliance, inadvertence, and good faith on his part, were of no avail, and that notwithstanding reliance on the advice of government investigators, the duty of the jury was to convict. It therefore follows that the presence or absence of wilfulness or intent as an essential element of the offense charged, was not fairly presented to the jury for decision. In Williams v. United States, 8 Cir., 158 F. 30 (Sanborn, Van Devanter and Phillips), the court approved an instruction that if the defendant, in good faith, relied on the Collector's advice in making memoranda until a form book was obtained, the jury was to find him not guilty. A verdict of guilty was there, however, set aside because the court put the burden upon the defendant to establish compliance with law. Here the defense was not available to the defendant, with or without the burden. It is clear, upon the entire record, that the court, long-experienced and of fine repute in trials under the National Prohibition Law, 27 U.S.C.A. § 1 et seq., inadvertently applied the absolutes of that Act. The case must be reversed and remanded for a new trial, with directions to the court to submit to the jury, upon appropriate instructions, the issue as to whether the failure of the appellant to keep records was wilful and intentional under all of the circumstances of the case.

■ Another consideration would seem to justify this disposition. The appellant conceived his challenged disposal of liquors to be loans and not sales, a concept accepted by the jury by reason of their verdict of not guilty on the fifth count of the indictment which charged that the purchase of the liquors was for purpose of resale at wholesale. Nevertheless, he bought a wholesaler's license for the year, and, upon the advice of a government inspector, purchased a retroactively effective license for June, paying therefor both the regular fee and the penalty for late purchase. He was sold these licenses by the government without his having or being then advised that he was required to have a basic permit. The government agents also advised him that until he could obtain the proper forms it was all right for him to keep his record of sales on a memorandum pad to be later transferred to proper forms when they were obtainable. It is true that subordinate officers of the United States are without power to waive requirements of law or regulations. But while present circumstances do not support the conventional defense of entrapment, yet the unfairness which lies at the base of a doctrine that condemns and nullifies prosecution for a crime which a defendant is induced, by government officers, to commit, is to an extent likewise present here. The government took the appellant's money for a wholesaler's license which, without a basic permit, he was without authority to exercise. It gave him a license ostensibly validating transactions entered upon in June without either permit or license. It advised him that he might keep memorandum records until forms were available. It now prosecutes him for following such advice and exercising an authority which, it now says, he never had. The result is no repugnant to generally accepted notions of fairness and the American concept of due process, that it ought not to be sustained, unless every defense to what is, at the most, a technical violation, is by the jury considered and decided.

■■ Since the case must be retried it is necessary to say we find no infirmity in the indictment because the allegations

therein, in respect to failure to record transactions on each of the several designated forms, is in the disjunctive rather than in the conjunctive. The short answer to the contention of the appellant that he had no means of knowing with which failure he was charged, is that the indictment does not charge affirmative acts, but omissions. So charged, it becomes clear that the defendant is not charged with having failed to comply with one or another duty in the alternative, but is charged with failure to do each and all of the things that the statute requires him to do. He cannot be deceived or confused by a phrase which, though in form disjunctive, is not so in meaning. The cases relied upon by the appellant all relate to indictments charging affirmative acts in violation of law. With respect to the rejection of the Taylor letter of July 10, we find no error in the ruling of the court. The letter would have been innocuous, if admitted, and its rejection is equally unimportant and clearly within the discretion of the court.

Judgment reversed and the cause remanded for new trial in conformity herewith.